DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[No. 13161. In Bank. — September 12, 1890.]

## THE LAST CHANCE WATER DITCH COMPANY, RESPONDENT, v. AUGUST HEILBRON ET AL., APPELLANTS.

86   1
137  440

WATER RIGHTS — PRESCRIPTION — RIPARIAN RIGHTS — INJUNCTION — FINDINGS — REVIEW OF EVIDENCE. — Where the findings in favor of a prescriptive right of an appropriator to divert water from a riparian owner, in an action to enjoin the interference of the riparian owner with the flow of the stream into the ditch of the appropriator, are entirely unsupported by the evidence, the judgment will be reversed.

ID. — CAPACITY OF DITCH — VELOCITY OF FLOW — FAILURE TO PROVE GRADE. — The evidence is insufficient to show the carrying capacity of the ditch of an appropriator, where there is nothing to indicate the velocity of the flow except the width and depth of the ditch, without any evidence as to its grade.

ID. — FINDINGS CONTRARY TO COMPLAINT — EXTENT OF DIVERSION — NOTICE OF APPROPRIATION. — When the notice of appropriation corresponds with the allegations of the complaint, a finding that the extent of the appropriation and diversion actually made by plaintiff's ditch, and which the plaintiff is entitled to make, is twelve times the amount claimed in the complaint, is erroneous, as in direct conflict with and in excess of the allegations of the complaint.

ID. — ADVERSE USER — ACQUIESCENCE — FINDING CONTRARY TO EVIDENCE. — A finding that the appropriation and diversion of a stream by plaintiff was made continuously, uninterruptedly, and adversely to the defendants and their grantors is unsustained by the evidence, when the evidence shows without conflict that there were long periods of time, during several years, when, at the low stage of water, there was no water

LXXXVI. CAL.—1

in plaintiff's ditch, and that for only two years plaintiff succeeded in getting water for a longer period by entering upon the lands of defendants, and diverting it therefrom without the knowledge or acquiescence of defendants or their grantors, and that when such diversion was ascertained to be to the prejudice of defendants, it was interfered with to such an extent as to restore the flow of the water to its previous condition.

ID. — TRESPASS UPON RIPARIAN LANDS — OBSTRUCTION OF FLOW — INTERRUPTION — PRESCRIPTION. — Incursions by an appropriator of a water right upon the land of a riparian proprietor, for the purpose of obstructing the flow of water in a certain channel, and increasing the flow in another channel of the same river, not assented to by the riparian proprietor, who destroyed the work of the appropriator as often as he discovered it, do not secure to the appropriator any prescriptive right in the water secured thereby, however long the incursions may have continued, or however frequently they may have been repeated.

ID. — RIGHTS OF APPROPRIATOR — INTERFERENCE OF RIPARIAN OWNER. — While an appropriator of a water right has the right to take the water from the bed of the stream at the head of his ditch, to the full extent of the appropriation, whenever the water comes there, he has no right to enter upon the lands of a riparian proprietor and tap streams to increase his supply; nor has he any rights in the waters which naturally flow over and across the lands of a riparian proprietor, while on the lands of such proprietor; but it is only when the riparian proprietor prevents the water from running back into the river at or above the head of the appropriator's ditch, by an interference with the course of nature, that the appropriator can complain; and he has no right to complain of the riparian owner for interrupting or stopping the trespasses of the appropriator upon his lands to divert water therefrom.

ID. — FORMER ADJUDICATION — ESTOPPEL — INTERFERENCE WITH SLOUGH UPON RIPARIAN LANDS. — When a former action was brought by the riparian proprietor, who is defendant in the present action, against the plaintiff corporation, who claimed the water as an appropriator, to restrain it from deepening the stream, and from damming up the head of the slough in controversy, and from interfering with the channel of the stream or slough, or interfering with the flow of water from the channel of the stream into and through the channel of the slough, and a final judgment was rendered in such action, enjoining the appropriator "from doing any act or thing which shall interfere with or in any manner prevent the free flow of water into or down the channel of said slough," such judgment is *res judicata* as between the same parties, and estops the plaintiff in an action brought by the appropriator for an injunction to restrain the riparian proprietor from turning away the waters of the stream from plaintiff's ditch so as to run in the said slough upon the riparian lands of defendant.

ID. — USE OF STREAM IS SUBORDINATE TO RIPARIAN OWNER — PRESCRIPTION. — The mere use of water during seasons of abundance, when it naturally flowed down a certain channel of a slough to the head of plaintiff's ditch, without objection on the part of the riparian owner of the slough, gives

no prescriptive right to the plaintiff as an appropriator to change the course of the flow in seasons of scarcity, for the purpose of continuing its supply.

ID. — EVIDENCE — CROSS-EXAMINATION — INTERRUPTION OF USER. — Where it is sought to be proved by a director of the corporation claiming the water as appropriators, on his direct examination, that the company had used the water without interruption, a question asked upon his cross-examination, as to whether or not, as a director of the company, he understood and learned by the company's agents that the diversion of water had been interrupted, is pertinent and within the line of cross-examination, and should be allowed.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Brown & Daggett,* for Appellant.

The plaintiff is a mere appropriator, while the defendants are riparian proprietors. The defendants being riparian owners, their right to the flow of the water of Cole Slough is inseparably annexed to the soil, and passes with it, not as an easement or appurtenant, but as a parcel. Use does not create and disuse cannot destroy or suspend it. (*Lux* v. *Haggin,* 69 Cal. 391; *Stanford* v. *Felt,* 71 Cal. 249; Gould on Waters, sec. 204; Washburn on Easements, 3d ed., *215; Angell on Watercourses, 7th ed., sec 92.) As an appropriator the plaintiff has no right to change the head of its ditch or interfere with the channel of the stream to the injury or detriment of the rights of others. (Civ. Code, sec. 1412; *Butte T. M. Co.* v. *Morgan,* 19 Cal. 609.) The fact that the defendants permitted the whole or a part of the water of Cole Slough to flow down the Dutch John Cut into Kings River, and away from defendants' land, where it was diverted into plaintiff's ditch, would not furnish the foundation of a prescriptive right in plaintiff to have the whole or any portion of the waters of Cole Slough flow in the channel of Kings River so that it could be diverted by plaintiff. (*Hanson* v. *McCue,* 42 Cal. 310;

10 Am. Rep. 299; *Lakeside Ditch Co.* v. *Crane & Hayes*, 80 Cal. 181.) The acts of the defendants with reference to the head of the south channel were lawful, for a riparian proprietor has the lawful right to use all necessary means to protect the channel of a natural watercourse from washing out, to the injury of his land; and he also has the right to use all necessary means to prevent the channel of the stream from so changing that it will make a substantial alteration in the flow of the water. (Angell on Watercourses, 7th ed., sec. 333; *Barnes* v. *Marshall*, 68 Cal. 569; *Railroad Co.* v. *Carr*, 38 Ohio St. 448; 43 Am. Rep. 428.)

The right of the plaintiff here to divert the waters of Cole Slough, or to interfere with their free flow, was put in issue and tried and determined in the case of *Heilbron et al.* (the defendants here) v. *The Last Chance Water Ditch Company* (the plaintiff here); hence the judgment rendered in the action referred to is final and conclusive between the parties in the case in hand. (Freeman on Judgments, sec. 249; *Coburn* v. *Goodall*, 72 Cal. 506; *Byrne* v. *Crafts*, 73 Cal. 641; *Gray* v. *Dougherty*, 25 Cal. 272, 273; *Caperton* v. *Schmidt*, 26 Cal. 479; *Jackson* v. *Lodge*, 36 Cal. 28; *Estate of Pico*, 56 Cal. 420; *Parnell* v. *Hahn*, 61 Cal. 131; *Thrift* v. *Delaney*, 69 Cal. 189; *Duchess of Kingston's Case*, 2 Smith L. C. 610; *Fischli* v. *Fischli*, 1 Blackf. 360; 12 Am. Dec. 251; *Gardner* v. *Buckbee*, 3 Cow. 120; *Beloit* v. *Morgan*, 7 Wall. 622; *Bouchaud* v. *Dias*, 3 Denio, 238; *Doty* v. *Brown*, 4 N. Y. 71; *Bendernagle* v. *Cocks*, 19 Wend. 207; 32 Am. Dec. 248; *Philadelphia etc. R. R. Co.* v. *Howard*, 13 How. 307.) The evidence admitted, tending to prove nothing more than that the plaintiff had been guilty of committing annual trespasses upon the lands of the rancho Laguna de Tache and the channels of Cole Slough, was incompetent. A mere succession of trespasses can never ripen into a prescriptive right. (*Wheeler* v. *Spinola*, 54 N. Y. 387; *Miller* v. *Downing*, 54 N. Y. 631; *Trustees* v. *Kirk*, 68 N. Y. 465;

*Miller* v. *L. I. R. R. Co.*, 71 N. Y. 383; *Parker* v. *Wallis*, 60 Md. 15; 45 Am. Rep. 705; *Townsend* v. *Reeves*, 44 N. J. L. 525; *Brown* v. *Rose*, 55 Iowa, 734; *Wilson* v. *Blake*, 53 Vt. 305.) The question asked the witness, who was an officer of the plaintiff, whether he had not ascertained from the other agents of the plaintiff that the use of the water from Cole Slough by plaintiff had been interrupted, was competent. The question propounded was directly connected with the testimony given by the witness in his examination in chief. (Code Civ. Proc., sec. 2048; *Harper* v. *Lamping*, 33 Cal. 647; *Neal* v. *Neal*, 58 Cal. 288.) If the officers or agents of the plaintiff had notice or knowledge that plaintiff's use of the channel of Cole Slough had been interrupted, such notice or knowledge would be sufficient to charge plaintiff with knowledge of the fact that its use of the channel of Cole Slough had been interrupted. (*Chapman* v. *Erie R. R. Co.*, 55 N. Y. 579.)

*N. O. Bradley*, *W. S. Goodfellow*, and *A. J. Atwell*, for Respondent.

The plaintiff is not estopped by the judgment in *Heilbron* v. *Last Chance W. D. Co.*, as the *locus in quo* and the questions involved in that former action are entirely different from this. A judgment in a former action is conclusive only when the same cause of action has been once adjudicated between the same parties, or the same point has been put in issue upon the record and directly found by the verdict of the jury. (*Gilbert* v. *Thompson*, 9 Cush. 348; *Eastman* v. *Cooper*, 15 Pick. 276; 26 Am. Dec. 600. See also *McDonald* v. *Bear River etc. W. & M. Co.*, 15 Cal. 147.) In order that a judgment should be a defense in another action on the ground of *res judicata*, the same point must have been directly in issue and determined by the judgment. (*Fulton* v. *Hanlow*, 20 Cal. 486; *Flandreau* v. *Downey*, 23 Cal. 358; *Mitchell* v. *Insley*, 7 Pac. Rep. 203.) To sustain the plea of a former

judgment in bar of a second action, it must appear that
the cause of action in both suits is the same, or that
some fact essential to the maintenance of the second ac-
tion was in issue, and determined in the first action
adversely to the plaintiff. (*Perry* v. *Dickerson*, 85 N. Y.
347; 39 Am. Rep. 663; *Kerr* v. *Hays*, 35 N. Y. 338.)
Plaintiff has acquired the right, by adverse enjoyment
and use for the period of five years, to divert one hun-
dred feet of water per second from Kings River. Rights
to the use of water become fixed after five years' adverse
enjoyment of the same. (*Crandall* v. *Woods*, 8 Cal. 144;
*Union Water Co.* v. *Crary*, 25 Cal. 509; 85 Am. Dec. 145;
*Davis* v. *Gale*, 32 Cal. 35; 91 Am. Dec. 554; Gould on
Waters, sec. 335.)

Fox, J. — This is an action for injunction to restrain
the defendants from turning away from Cole Slough or
from Kings River the waters which in their natural
flow would run down to the plaintiff's ditch, and for
damages. The case was tried before the court without
the intervention of a jury, findings filed, and judgment
rendered in favor of plaintiff, enjoining and restraining
the defendants from damming up the southerly branch
or channel of Cole Slough, or from diverting or turning
away from said southerly branch or channel any of the
waters which in their natural flow would run down to or
into said southerly channel or branch, and from in any
manner obstructing or interfering with the free flow of
the water into or down the said southerly branch or
channel of Cole Slough, or through the Dutch John Cut.
Motion for new trial was made and denied, and defend-
ants appeal from the judgment, and from the order
denying said motion.

Plaintiff is a corporation, having no riparian rights,
so far as shown in this case, but claiming the right as ap-
propriator, to take water from Kings River, at the head
of its ditch, to the amount of fourteen thousand four

hundred cubic inches per second, under a four-inch pressure, for purposes of irrigation. The head of plaintiff's ditch is located on and near the southwest corner of section 26, township 17 south, range 21 east, Mount Diablo meridian, and takes the water from and to be used exclusively on the southerly side of Kings River.

The defendants are riparian proprietors, in possession of the rancho Laguna de Tache, containing about forty-eight thousand eight hundred acres of land, situate wholly on the northerly side of Kings River, bordering upon and bounded by the river for the distance of about thirty miles, covering the lands on the northerly side of said river for the entire distance here under consideration, and extending above and below the points herein mentioned.

Kings River flows, so far as its course here comes under observation, a general course from northeast to southwest, but by a somewhat crooked and tortuous channel. It enters township 17 south, range 22 east, at the northeast corner of section 1. At about the center of the south half of the northwest quarter of the section it takes a sudden turn and runs nearly due south about two miles, and from thence runs by a winding channel to a point in the north half of the northeast quarter of section 25, township 17 south, range 21 east, where it is intercepted from the north by what is known as Dutch John Cut. From here it runs by a winding course to a point in the southwest quarter of section 26 in the same township, where it is intercepted on the south side by plaintiff's ditch. From this point it runs by a nearly direct line to the northwest corner of said section 26, where it is intercepted from the north by what is called Reynold's Slough, and from thence runs a nearly west course, so far as it is necessary to trace it for the purposes of this case.

At the point of the first bend above mentioned, on section 1, township 17 south, range 22 east, Cole Slough

connects with and receives water from the river on the north side. This is shown to be a natural watercourse, cut out by the high waters, many years prior to the incorporation of plaintiff. It runs a general course from northeast to southwest, through the rancho Laguna de Tache, and wholly on said rancho, to a point on the northeast quarter of section 23, township 17 south, range 21 east, where its waters enter into what is called Reynold's Slough, above mentioned, and through it find their way to Kings River at a point one mile below the head of plaintiff's ditch, and by a course some miles shorter than that of the channel of the river. Cole Slough, at its upper or northerly end, is divided into two channels for a distance of about two miles or a little over; it then unites and flows in a single channel for about the same distance, when it is again divided into two channels, one called the north channel (sometimes called Waggoner's Slough), and the other the south channel. The north channel is much the shortest, running by the most direct route, and consequently has the most rapid current. The south channel bends down very much to the south, and runs within a few hundred yards of the bank of the river, at a point known as Dutch John Cut. From there it turns again rapidly to the north, and reunites with the north channel about one fourth of a mile above the point where the waters flow into Reynold's Slough.

Dutch John Cut is not and never was a natural watercourse. At the point where it connects with the south channel of Cole Slough, there was a natural depression in the ground over which the waters would flow at seasons of high water, but the river bank opposite consisted of a high ridge which prevented them from running into the river. The consequence was that they spread out over the alluvial lands to the westward, and formed a lagoon on what would otherwise be valuable meadow land. To obviate this, a tenant on the grant, in 1868

or 1869, called Dutch John, made a cut through the high river bank, to drain off this water. This cut was gradually enlarged by the action of the water, and in later years was still further deepened and enlarged by the plaintiff, so as to carry the waters of the south branch of ·Cole Slough into the river above the head of its ditch. It also is located entirely upon defendant's land.

It is shown that as early as 1868, by natural processes the channel of Kings River, at the head of Cole Slough, had become so filled with sand, and Cole Slough had become so enlarged and deepened, that during the dry season little, if any, water ran down the channel of the river, but all the water during the dry season found its way down Cole Slough, and only found its way to the river again through Reynold's Slough, at a point one mile below where the plaintiff subsequently connected its ditch with the river. During the season of high water, which does not exactly correspond to the rainy season, but is the season of melting snows, large bodies of water ran down both channels.

It further appears that the defendants and their predecessors have, and for many years past have had, upon said rancho, large numbers of cattle, dependent upon the waters of Cole Slough for water to drink; and also have under cultivation some four thousand acres of said rancho planted to alfalfa and other crops requiring irrigation, and even before the incorporation of plaintiff had commenced to appropriate and divert the waters of Cole Slough, for purposes of distribution upon the ranch for the use of their cattle, and for the irrigation of parts thereof, by means of a ditch connecting with said slough at its junction with Reynold's Slough; that as early as 1881 this ditch had been so enlarged and extended that it was forty-five feet wide on the bottom, four feet deep, and was, with its distributing branches, seventy-five miles in length; that as early as 1871 the head of the

south channel of Cole Slough had become from natural causes partially filled with sand, so that at low water most of the water would run down the north channel, and the defendant's predecessors, in that year, built a dam of brush and sand to further facilitate the turning of the water into the northern and shorter channel, and to prevent it from going down towards Dutch John Cut.

The plaintiff was incorporated in October, 1873. It alleges in its complaint that on or about the first day of May, 1874, it, "under and in pursuance of notice prior to that time duly given and made, appropriated and acquired the right to divert, appropriate, and use, of the waters of Kings River, . . . . fourteen thousand four hundred cubic inches per second, under a four-inch pressure, of the water thereof, and still has the right to so divert, appropriate, and use said amount of the waters of said stream."

1. The first point made by defendants, appellants here, is, that the evidence is insufficient to support the findings.

The court finds that in 1874 plaintiff constructed a large water ditch, connecting with Kings River at a point below Dutch John Cut, twenty-four feet wide on the bottom, and about thirty feet wide on the top, and about four feet deep, and has, and had, a capacity to carry one hundred cubic feet of water per second; that in the spring of 1875 plaintiff appropriated and diverted from said Kings River one hundred cubic feet of water per second, and for a period of more than five years thereafter plaintiff appropriated and diverted from said river into its said ditch said quantity of water, publicly, openly, peaceably, continuously, notoriously, uninterruptedly, and adversely to the defendants and the whole world, under claim of right, and with the knowledge and acquiescence of the defendants and their grantors, and, except when prevented by the defendants as hereinafter found, the plaintiff, ever since the spring of 1875, has

appropriated and diverted from said river, into its said ditch, said quantity of water, and thereby the plaintiff acquired, and still has the right to divert and use, the waters of said river to the extent aforesaid, and said water has been used for irrigation.

This finding is entirely unsupported by the evidence in several particulars. There is to our minds no evidence whatever to show what the carrying capacity of this ditch was or is. That depends not only upon the width and depth of the ditch, but also upon the velocity of the flow, and we are unable to find any evidence upon the subject of the velocity of this flow. It is true that one or two witnesses say they think it would carry about a hundred cubic feet per second, but it is perfectly apparent from their testimony that the only reason they have for this opinion is that in their judgment a cross-section of the ditch one foot in width would contain about a hundred cubic feet. No test of velocity is ever made, and no proof of grade is made to enable one to calculate the average velocity of the flow. Again, this finding is in direct conflict with and in excess of the allegations of the complaint. According to the complaint, the appropriation made by plaintiff was made "in pursuance of notice duly given and made." If this means anything, it means that it was done in pursuance of notice given as required by the provisions of the Civil Code. Those provisions require that the appropriator shall state in the notice the extent of the appropriation, giving the number of inches, under a four-inch pressure, and the place of intended use, which notice must be posted at the point of intended diversion. (Sec. 1415.) This is the first step in the act of appropriation, and the complaint shows that the appropriation was made in pursuance of this step duly taken. The extent of the appropriation, as set forth in the complaint, according to the notice, and as afterwards actually made, and as plaintiff now claims the right to make it, was and

is fourteen thousand four hundred cubic inches per second. And yet the court finds that the extent of appropriation and diversion actually made, and which plaintiff is now entitled to make, was and is one hundred cubic feet per second, — twelve times the amount claimed in the complaint; and it enjoins the defendants from doing any act or thing that shall interfere with the right of plaintiff to divert the quantity which plantiff is so found to be entitled to divert.

Nor is there any evidence to support the finding that this appropriation and diversion was made continuously, uninterruptedly, or adversely to the defendants or their grantors. On the contrary, the evidence without conflict shows that during most of the years since 1875, during the stage of low water in the river, there were periods of several weeks at a time when there was no water in plaintiff's ditch, and it is not shown that this did not occur for some portion of the time during every year; the only years in which it is not affirmatively shown that the ditch was dry a part of the year are the two last ones, during which time it is shown that plaintiff succeeded in getting water for a longer period than usual by entering upon the lands of defendants, and turning the waters of the north channel of Cole Slough down the south channel, and thence through Dutch John Cut into the river; but even then it is not affirmatively shown that a continuous flow of water in the ditch was secured. And so far as relates to water that was taken from the river by first diverting it from the north channel of Cole Slough and turning it into the river through the south channel and Dutch John Cut, the finding that it was done with the knowledge and acquiescence of defendants and their grantors is in direct conflict with all the evidence upon the subject.

The court then finds that prior to 1868 all the waters of Kings River flowed down the old or main channel of the river; that ever since 1868, during the period of

low water in each year all the waters of the river have flowed down Cole Slough; that since 1874 a large portion of the waters thereof have flowed down the southerly branch of Cole Slough into Dutch John Cut, and thence into the river above the head of plaintiff's ditch, and that ever since 1875 plaintiff has obtained its supply of water through said channel of Cole Slough and Dutch John Cut, and for more than five years after the spring of 1875 plaintiff appropriated and diverted into said ditch, through said channel of Cole Slough and Dutch John Cut, during the low-water season, the said quantity of water claimed by plaintiff, peaceably, openly, notoriously, continuously, uninterruptedly, and adversely to the defendants and the whole world, under a claim of right, and with the knowledge and acquiescence of the defendants and their grantors; and except when prevented by the defendants as hereinafter found, the plaintiff, ever since the spring of the year 1875, during the low-water season, has appropriated and diverted from said Kings River, through said channels of Cole Slough and Dutch John Cut, into its said ditch, its said quantity of water, which has been used for irrigation.

This finding is unsupported by the evidence in this: the evidence given on the part of plaintiff shows, without any substantial conflict, that since 1877 plaintiff's ditch has drawn no water from Kings River during the period of low water (which the court has found in another place to be from about the middle of August until the rainy season sets in in the month of December in each year); but by annual or biennial incursions made without right upon the lands of defendants, and the making of dams across the north channel of Cole Slough, and scraping out the south channel and the channel of Dutch John Cut, the plaintiffs have succeeded, since 1877, in getting water a little later in the summer, and a little earlier in the following winter or spring, than they did get it in 1875 and 1876, or would have gotten

it if such incursions had not been made and such work had not been done. Even by these methods, however, which were entirely unauthorized and without right, but which for some nine or ten years were not successfully carried to an extent which interfered with the supply of defendants, there were some four months in each year during which, according to the uncontradicted testimony of directors of plaintiff, no water flowed through the ditch of plaintiff. And the proof is uncontradicted that these incursions were made and these trespasses committed without the knowledge or acquiescense of defendants, except on one occasion, during a season of extreme low water unusually early, when a conference was had, and defendants consented that plaintiff might construct a certain kind of dam in the north channel, upon certain prescribed conditions, which would still leave a supply for defendants; but it is shown that the condition was not complied with, and the dam then constructed by plaintiff was immediately torn out by its own men, at the command of defendants, and no dam was ever afterwards constructed on the north channel, nor any work done on the south channel, with the consent of defendants.

The court also finds that Dutch John Cut is now, and has been since 1875, a natural watercourse, through which the waters of Kings River and Cole Slough have at all times flowed into plaintiff's ditch, as hereinbefore found.

The evidence is insufficient to support this finding. Dutch John Cut was a small, artificial cut, made as hereinbefore stated. In 1877, and annually thereafter, according to the uncontradicted testimony of plaintiff's own witnesses, plaintiff entered upon and enlarged it, and cut it deeper, for the purpose of turning the waters of Cole Slough through it at a lower stage of water than it otherwise would have flowed through.

The dam built in 1871, to turn the waters in the north

channel (referred to in our general statement of the facts), was swept away by the first succeeding freshet, and before the organization of plaintiff, and at the time of plaintiff's appropriation there was no unnatural interruption to the flow down either channel.   The court finds that on the tenth day of January, 1887, the defendants, against the will and without the consent of plaintiff, constructed a dam in and across the head of the southerly branch of Cole Slough, and by means thereof turned away the waters which had been accustomed to flow from Kings River through the said Cole Slough, and through the said southerly branch and Dutch John Cut back into Kings River above the head of plaintiff's ditch, and through plaintiff's said ditch, and that the effect thereof was to deprive plaintiff's ditch of such water at the season of the year when all the waters of Kings River flow down said Cole Slough, and have thence hitherto diverted and turned away from plaintiff the said waters ; and also that neither the defendants nor their predecessors have ever kept or maintained any dam across the said south channel of said slough, except as hereinbefore stated.

There is some evidence to support these findings, but the findings do not state the whole truth as shown by the evidence upon which they are based.   The evidence shows that the plaintiff, with one or two exceptions, made annual incursions from 1877 to 1887, upon the premises of defendants, and changed the natural condition of both channels of Cole Slough, near the upper junction thereof; by scraping the sand and earth out of the south channel and placing it in the north channel.   As soon as the supply of water in the north channel ran low by reason thereof, and the attention of defendants was thus attracted to the fact, they would go up to the junction, and finding what had been done, would move the sand back again out of the north channel, into the south one, and thus restore the channels practically to their natural con-

dition. Sometimes the sand would thus be moved back and forth twice in the same year. And this kind of scrambling effort to change the course of the water at its lowest stages on the one side, and to preserve it on the other, was kept up until 1887. In that year the plaintiff again repeated the process of scraping out the south channel, and built a brush and earth dam across the north channel, and this fact becoming known to defendants, they moved the whole thing over into the south channel, and thereafter did maintain a dam across the south channel to a sufficient extent to prevent water flowing down said south channel at all stages of water when it would not have flowed down there if both channels had been left in their natural condition, or as the elements would have left them if undisturbed. And it is for this act that the present action is brought; or in other words, to enjoin the defendants from protecting themselves against the trespasses and wrongs of the plaintiff.

Nothing in plaintiff's notice or act of appropriation authorized it to go, or justified it in going, upon the lands of defendants, and interfering with or altering the water-ways situate thereon, for the purpose of increasing the flow of Kings River at the head of their ditch, or of extending or prolonging the period thereof; and the evidence fails to show that the defendants, after the appropriation by plaintiff, interfered with or altered the channels, even upon their own land, so as to diminish that flow, or shorten the period thereof; or that they interfered with said channels at all, except to restore them, from time to time, as near as practicable to the condition that they would have been in had it not been for the changes wrongfully made therein by the plaintiff. It is also apparent from the evidence that the plaintiff knew when it made its appropriation what to expect as to quantity and continuance of flow; that the appropriation was made, and the ditch constructed, with reference to the use of, and with the intent to use, the water only

at the periods of high and medium flow,— with no expectation of using it at periods of low water. The ditch itself was constructed purposely and intentionally so as to let a stream some one hundred and fifty feet wide and fourteen inches deep run past the head of the ditch before any could be taken out, and this with a full knowledge that the channel of the river carried no water during the low stages, and that at extremely low water none ran in the south channel of Cole Slough. The evidence tends to show that since then such changes have been made or have occurred in the bed of the river at that point as to enable the plaintiff to take the water so long as any comes to the head of the ditch, but this was not the original intention. No doubt, so far as any claim of these defendants is concerned, the plaintiff is entitled to take water from the bed of the river, at the head of its ditch, to the full extent of its appropriation, whenever the water comes there, from whatever source it may come and reach the river-bed at that point; but this gives the plaintiff no right to enter upon private property, and tap other streams, for the purpose of securing water for its ditch, or of augmenting the flow of the river at the head thereof.

And it is unnecessary for us in this case to discuss the measure of defendant's rights in the waters which naturally flow over and across their own lands. To those waters, while on the lands of defendants, the plaintiff is a stranger. It is only when the defendants prevent the water from running back into the river at or above the head of plaintiff's ditch, by an interference with the course of nature,— not simply by interrupting or stopping the trespasses of plaintiff,—that the plaintiff can complain; and the evidence does not justify the conclusion that there has been any such interference.

The incursions of plaintiff upon defendants' land, for the purpose of obstructing the flow of water in the north channel and increasing the flow in the south channel of

Cole Slough, were never assented to by defendants, but as often as discovered the work of plaintiff in that behalf was undone by defendants. However long, therefore, those incursions may have continued, or however frequently they may have been repeated, they did not secure to plaintiff any prescriptive right in the water secured thereby. (*Hanson* v. *McCue*, 42 Cal. 310; 10 Am. Rep. 299; *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181.)

2. The next point made by appellants is, that the plaintiff is estopped, by matter of record, from claiming or diverting any of the waters of Cole Slough, or interfering with the free flow thereof. This point we think is well taken.

It appears that in 1885 the plaintiff, evidently dissatisfied with the result of its efforts to augment its supply by diverting the water from the north to the south channel, went up to the head of Cole Slough, and scraped out and deepened the bed of the river, and constructed a dam so as to divert the flow of the water from the head of Cole Slough. Thereupon these defendants commenced an action against the plaintiff, filing a complaint in which they set up the fact of their ownership and possession of the rancho Laguna de Tache, that Cole Slough ran for its entire length over and across said rancho, of their use of the waters of Cole Slough for their cattle, and their appropriation and diversion thereof by means of ditches at the lower end thereof for the irrigation of their lands, as hereinabove set forth; of the action of defendant therein (this plaintiff) in deepening the channel of the river and obstructing the flow of the water down the channel of Cole Slough, *and to and through the head-gate and canal of plaintiffs* (these defendants), and prayed an injunction forever restraining the defendant (this plaintiff) from entering upon the channel of Kings River, or the channel of Cole Slough, and from in any manner interfering with the channel of said river or of said Cole Slough, or from in any manner interfering with the

flow of water from the channel of said river into and *through* the channel of said Cole Slough. In this action such proceedings were subsequently had as that on May 3, 1886, judgment was duly given and made, forever enjoining and restraining the defendant (this plaintiff) "from digging out, enlarging, or lowering the channel of Kings River at and immediately below the head of Cole Slough, and from erecting or maintaining any dam or other obstruction in or across the channel of said Cole Slough at or near its head; *and from doing any act or thing which shall interfere with or in any manner prevent the free flow of water into or down the channel of said Cole Slough.*" This judgment has become final.

Respondent insists that this judgment does not work an estoppel in this case, for the reason, as it claims, that the trespasses then complained of and enjoined were those, and those only, at the head of Cole Slough. We do not so read either the complaint or the judgment in that case. The *locus in quo* was a mere incident of the cause of action or the relief sought. The substantive wrong complained of was the prevention of the water from flowing into and down the channel of Cole Slough, and into the head of the ditch of plaintiffs in that case. The judgment restrained not only the acts at the *place* complained of, but any act which would have the effect of preventing the water from flowing into or down the channel of said Cole Slough.

The injunction therefore ran, not alone as to the head, but as to the entire length of Cole Slough, and in doing so it did not exceed the relief warranted by the allegations and the prayer of the complaint. The effect of the judgment in the present case is to restrain and enjoin these defendants (the plaintiffs in the former case) from interfering with such trespasses of the plaintiff herein (defendant in the former case) as are committed in violation of the former injunction, and are intended to and do defeat its purpose. In other words, the effect of this

judgment is to enable the plaintiff to deprive the defendants of the fruits of the former judgment, rendered in their favor, and still remaining in full force.    The right to have the water flow, according to the course of nature, through the channels of Cole Slough, from end to end, not only might have been, but as we read it was, within the purview of that former action, both in respect to matters of claim and defense, and was there adjudicated and determined.    That determination is *res judicata* as between these parties.    (*Coburn* v. *Goodall*, 72 Cal. 506; Freeman on Judgments, sec. 249, and cases cited.) Finding, as we do, that the question of this right was involved and passed upon in the former case between the same parties, the authorities cited by respondent are not in point.

3. Appellants assign as errors of law the rulings of the court in overruling defendants' objections to nine different questions propounded to witnesses by plaintiff. We do not deem it necessary to take these questions up in detail.    The evidence elicited by the responses to them was incompetent to prove any fact in issue, or to show that plaintiff had acquired a prescriptive right to enter upon the lands of defendants, or upon any of the channels of Cole Slough, for the purpose of interfering with the free and natural flow of the waters through the same, and its admission was therefore erroneous. The fact that plaintiff committed annual trespasses upon the rancho, or upon the channels of Cole Slough, gave it no prescriptive right to continue such trespasses.    The mere use of the water during seasons of abundance, when it naturally flowed down the south channel of Cole Slough and Dutch John Cut, without objection on the part of defendants, gave to plaintiff no prescriptive right to change the course of the flow in seasons of scarcity, for the purpose of continuing its supply.    (*Anaheim W. Co.* v. *Semi-Tropic W. Co.*, 64 Cal. 185.)

The court also erred in sustaining an objection to the

question put by the defendants upon cross-examination to the witness Ayres. The question was: "As a director of the company, you understood and learned by your agents that the diversion of water had been interrupted, did n't you?" Plaintiff had sought to prove by the witness on his direct examination that it (plaintiff) had used the water through the south channel of Cole Slough, and Dutch John Cut, without interruption. The question was pertinent, and clearly within the line of cross-examination, and if answered in the affirmative, would have charged the plaintiff with knowledge of such interruption,—which was the purpose of the question.

Respondent makes a separate point as follows: "Plaintiff has acquired the right, by adverse enjoyment and use for the period of five years, to divert one hundred cubic feet of water per second from Kings River."

The contest in this case is not so much as to the quantity which plaintiff has the right to divert from Kings River, as it is to the question of plaintiff's right to augment the quantity in Kings River by diverting from Cole Slough at a time when the water is so low that it would not naturally flow into Kings River therefrom. For this reason it is not necessary for us to say more than we have already done on the question of quantity. The quotations which counsel makes from the testimony of his witnesses sustain us in what we have said on that subject, and they do not sustain the plaintiff in its claim of right to augment the flow in Kings River by an unnatural diversion of the waters of Cole Slough.

Holding, as we do, that the evidence fails to show that the defendants have obstructed or diverted, or intend to obstruct, divert, or turn aside, the waters which in their natural flow would flow down through Cole Slough into Kings River at or above the head of plaintiff's ditch, or have done or intend to do anything more than to prevent such natural flow being changed or diverted by the act of plaintiff, and that plaintiff has been and is estopped

from changing or claiming the right to change the natural flow thereof, it follows that the judgment and order appealed from must be reversed.

So ordered.

McFARLAND, J., SHARPSTEIN, J., and THORNTON, J., concurred.

PATERSON, J. — I concur on the second ground discussed. by Mr. Justice Fox, viz.: That the record in *Heilbron* v. *The Last Chance W. D. Co.* established an estoppel in favor of the defendants and against the plaintiff herein.

WORKS, J. — I concur in the judgment.

Rehearing denied.