(February 8, 1904.)

ABBOTT v. REEDY.

[75 Pac. 764.]

CONFLICTING EVIDENCE—ISSUES COVERED BY PLEADINGS.

1. Evidence examined, and, *held,* that there is a substantial conflict upon the point urged, and that the appellate court cannot therefore disturb the findings and judgment based thereon.

2. Where the issue as to the existence of a separate and distinct water right and appropriation is not made by the pleadings, and the proofs tend to establish such right, and no amendment of the pleadings is offered in the trial court, this court will not go beyond the issues so made to modify a judgment.

(Syllabus by the court.)

APPEAL from District Court in and for Blaine County. Honorable Kirtland I. Perky, Judge.

Suit by George H. Abbott and others to determine the rights and priorities of the various water consumers of and from Soldier creek in Blaine county. From a decree settling the respective rights of all the parties defendant, John Wardrop appeals. Affirmed.

R. F. Buller, for Appellant Wardrop.

It is an undisputed fact that the appellant Wardrop has the oldest water right on Soldier creek, and the court so found, as shown by the decree. The evidence also affirmatively shows that for about nineteen years he and his predecessors in the ownership of the one hundred and twenty acres of land that he obtained from C. E. Sampson had deemed it necessary to use, and had claimed and used, more than two inches of water to the acre during the irrigating season every year for the purpose of irrigating the said one hundred and twenty acres and a part of another eighty acre tract adjoining it. In reference to irrigating waters, he who is first in time is best in right. (Idaho Rev. Stats., sec. 3159.) The court had no right to adopt an arbitrary rule, founded upon the mere guesswork of witnesses, that one inch to the acre was sufficient in all cases upon any and all kinds of land, and so deprive the appellant of a large share of the water that he had used for nearly five times the period of limitation and give it to other parties. As to the quantity necessary, one party guessed an inch to the acre and the other, with equal firmness, guessed two and one-half inches. So the guesses were a standoff. But the fact of a claim and continuous use of more than an inch to the acre remained uncontroverted and ought to have prevailed. (*Campbell v. West,* 44 Cal. 646; *Alhambra Water Co. v. Richardson,* 72 Cal. 598, 14 Pac. 379.) The court erred in dating the allowance of one hundred and twenty-five inches from June 27, 1885. The testimony is that Wardrop and Ballard began work on their ditch in May, 1885, and completed it in June, and the date should have been May 27, instead of June 27, 1885. (2 Idaho Codes, 200, sec. 2580; *McDonald v. Bear River Co.,* 13 Cal. 220-223; *McCall v. Porter,* 42 Or. 49, 70 Pac. 823, 71 Pac. 976.) The right accrues from appropriation. This ap-

propriation is the intent to take, accompanied by some open, physical demonstration of the intent, for some valuable use.

L. L. Sullivan and T. W. Thomas, for Respondents.

This is the usual form of action to obtain an adjudication of water rights, and was brought to settle the rights and priorities to the use of the waters of Soldier creek, in Blaine county. The plaintiffs and defendants were decreed not to exceed one inch of water for each acre of land owned by them, and in some instances were decreed one hundred inches of water for one hundred and sixty acres of land. The appellant, John Wardrop, did not make a motion for a new trial, but appealed directly from the judgment. There being a substantial conflict in the evidence upon the only question involved in this appeal, the appellate court will not disturb the judgment of the lower court. (*Cash Hdw. Co. v. Sweeney, ante,* p. 148, 72 Pac. 826; *Stuart v. Hauser, ante,* p. 53; 72 Pac. 719.)

AILSHIE, J.—This was a suit in equity commenced by several plaintiffs in the district court in and for Blaine county against numerous defendants to determine the respective rights and priorities of water consumers on Soldier creek in said county. Most of the defendants answered by way of cross-complaint, setting up their several interests and claims. The defendant Wardrop, who is the only appellant in this court, filed his answer and cross-complaint, specifically denying all the allegations of the complaint and setting up a prior right to the use of the waters of said stream sufficient to irrigate a tract of three hundred and sixty acres lying under the stream. The case went to trial and the various plaintiffs and defendants introduced their evidence establishing, or tending to establish, their several rights and priorities, and thereafter findings of fact and conclusions of law were made and judgment was thereupon entered decreeing the several interests and priorities of the respective parties to the suit. The defendant Wardrop was awarded one hundred and twenty inches dating from November 30, 1882, and one hundred and twenty-five inches dating from June 1, 1885. Wardrop was dissatisfied with the

quantity of water awarded him by this decree, and thereupon prepared and had settled a statement on appeal containing the evidence which relates to his claims for the use of water and the dates from which he is entitled to have the same attach. It appears from the evidence, and was found by the court to be a fact, that this appellant had the oldest water right on Soldier creek, and that his claim was prior to all others in point of time. The question presented upon this appeal goes to the sufficiency, or rather insufficiency, of the evidence to justify the court in awarding the appellant the amount of water designated in the decree dating from the dates therein mentioned. It is here urged that the court should have awarded Wardrop two inches of water per acre instead of one inch per acre, as provided for in the decree. It appears from the evidence of the defendant himself that he owned three hundred and sixty acres of land on Soldier creek, and that one hundred and sixty acres of this tract which was farthest up the stream was originally located and patented by him, and that he purchased the next claim of one hundred and twenty acres below him from one C. E. Sampson, and another claim of eighty acres next below that from George Sampson. Appellant testified upon the trial as follows: "The C. E. Sampson place is the lower place, one hundred and twenty acres; about one hundred acres of this can be irrigated. The main channel of the stream runs through forty acres of that place and through the George Sampson place; eighty acres, possibly one hundred acres, of the one hundred and twenty (C. E. Sampson place) is covered by the ditch or ditches that I have made on it. About one hundred and twenty or one hundred and twenty-five acres of my upper place is covered by my ditches and I cultivate and irrigate twenty acres of the George Sampson place out of Soldier creek, and that is all that Soldier creek will cover on that eighty."

It will be seen from this evidence of the appellant that not exceeding two hundred and forty-five acres of his entire tract of three hundred and sixty acres can be irrigated from his ditches. He was, therefore, according to his own evidence, awarded one inch of water per acre for all his land lying under

his ditches.   Upon this phase of the case there is no conflict in
the evidence.

We next come to the question as to the amount of water
necessary for successful irrigation of these particular tracts of
land.   Wardrop testified that he had been in the habit of using
about two inches per acre, and that he thought it would take
about two and two and a half inches per acre to successfully ir-
rigate these lands.   A number of witnesses were called and
testified as to the amount of water necessary to irrigate appel-
lant's land, and most all of them testified that they thought
one inch per acre was a sufficient quantity of water for that
purpose.   Some of the witnesses were men who had had many
years of experience in the irrigation of arid lands; a couple of
them had been water-masters in various irrigation districts in
Idaho.   The testimony of these witnesses was only an estimate
on this point, but that estimate was based upon their knowledge
of the country and class and character of land to be irrigated
and their experience in the irrigation of similar lands.   Appel-
lant was but little more definite and certain as to his estimate
of the quantity of water necessary to irrigate his lands.   It is
true that he said he had been using about two inches per acre;
but the law only allows the appropriator the amount *actually*
necessary for the useful or beneficial purpose to which he ap-
plies it.   The inquiry was, therefore, not what he had used, but
how much was actually necessary.   There was a clear and sub-
stantial conflict in the evidence as to the quantity of water per
acre necessary for the successful irrigation of appellant's lands.
This being the case, we cannot interfere with the findings of
the trial court or disturb the judgment founded thereon.   It
is unnecessary to cite the numerous cases decided by this court
in which it has declined to disturb findings and judgments
where there has been a conflict in the evidence.

It is also contended that the defendant Wardrop should have
been awarded at least twenty-five inches of water dating from
1887, diverted by means of a ditch three-quarters of a mile
north of his ranch and covering some thirty acres on the west
side of the creek.   There seems to have been only slight men-
tion of this ditch and water right at the trial, and the appel-

lant seems to have spoken of his ditches (in the plural) and the lands governed by them in such a general and indiscriminate way (as illustrated by the evidence above quoted) that we are not prepared to say from the record before us that appellant is entitled to any such right as now claimed. This also goes beyond the issue made by appellant's cross-complaint. By this complaint he claims a right dating from 1882 and another dating from 1885, but no claim was there made for any right dating from 1887. Under the pleadings and facts as presented here, we do not think we would be justified in directing any modification of the judgment upon this ground.

We therefore conclude that the judgment of the trial court must be affirmed, and it is so ordered, with costs to the respondents.

Sullivan, C. J., and Stockslager, J., concur.