(May 15, 1909.)

FARMERS' CO-OPERATIVE DITCH COMPANY, a Corporation, Plaintiff and Respondent, v. RIVERSIDE IRRIGATION DISTRICT, LTD., et al., Defendants and Respondents. NAMPA & MERIDIAN IRRIGATION DISTRICT, PIONEER IRRIGATION DISTRICT, RIVERSIDE IRRIGATION DISTRICT, LTD., and NEW YORK CANAL COMPANY, LTD., Defendants and Appellants.

[102 Pac. 481.]

LACHES IN PERFECTING APPEAL—STIPULATION CONSIDERED—IRRIGATION —PRIORITY OF APPROPRIATION—ESTABLISHMENT OF PRIORITIES— DUTY OF WATER—COMPETENT EVIDENCE TO ESTABLISH THE DUTY OF WATER—TAXING COSTS OF MAKING SURVEY.

1. Showing examined in this case and held sufficient to exempt the appellants from the charge of laches imputed to appellants in *McCrea v. McGrew,* 9 Ida. 382, 75 Pac. 67, and *Smith v. American Falls Canal & Power Co.,* 15 Ida. 89, 95 Pac. 1059.

2. A stipulation entered into between the attorneys for the respective parties in an action, whereby they agree that the complaint, answers and cross-complaints in the case shall be "deemed amended to conform to the facts as found by the court," will not preclude

the losing party from thereafter questioning the sufficiency of the findings or of the facts proven to support the findings.

3. Evidence in this case examined and held sufficient to support the findings as to the respective rights of diversion and priorities of the several appropriators of water from the Boise river.

4. Evidence in this case examined and held insufficient, when viewed in the light of the affidavits on motion for a new trial, to support the finding as to the duty of water in the Boise Valley, and particularly insufficient to support the finding that "The quantity of water required for the successful irrigation and cultivation of said lands, measured at the intake of the respective ditches under a four-inch pressure, is as follows: For bench lands, one inch per acre. For bottom lands, one and one-tenth inch per acre,"—the affidavits on motion for a new trial conclusively establishing that as large an acreage cannot be irrigated under the decree as was formerly irrigated by the respective appropriations prior to the entry of such decree, and that a less quantity of water per acre will successfully irrigate the lands under the canals.

5. The duty of water for the successful irrigation of lands cannot be established by guesswork and hearsay evidence, or by witnesses who have never measured water applied to lands and have never seen water measured, and have made no tests in reference thereto, and do not know the size of a stream and the grade or pressure necessary to carry a given number of inches of water as measured under the irrigation law.

6. A witness, in order to be competent and qualified to testify as to the number of inches of water necessary for the successful irrigation of lands, must have had some observation or experience in the measurement of water and its application to the land.

7. The amount of water that a water user and consumer has been in the habit of using and applying to his lands cannot be accepted as the true test of the duty of water, but the question to be determined in such case is the amount actually necessary for the useful or beneficial purpose to which the water is to be applied.

8. In determining the duty of water, reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation. Economy must be required and demanded in the use and application of water, and this economy should be as rigidly demanded of a water user who has a prior and superior water right as of any other person.

9. The expenses incurred in making surveys, maps and plats by the state engineer under the irrigation law and in obedience to an order of the trial court is a proper expense to be taxed up against the appropriators and claimants of water who are litigants in the case, and this may be done even though the maps, plats and report be not introduced in evidence.

10. In such case the expense incurred by the state engineer is done in compliance with a specific provision of the statute, and in obedience to an order of the court, and does not fall within the general rule applicable to the allowance of costs for witnesses and other evidence.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. George H. Stewart, Judge.

Action by plaintiff to have the rights and priorities of the several appropriators of water from Boise river established and decreed. Judgment decreeing the respective rights and priorities. Certain defendants move for a new trial and appeal from an order overruling the same. Judgment affirmed except as to the duty of water, and as to that issue reversed and new trial ordered.

Hugh E. McElroy, W. E. Borah, Rice & Thompson, and E. J. Frawley, for Appellants.

Both under the constitution and the laws of the state, the public have legal rights in a case of this character as well as the private litigants. Both the law and the public policy of the state demand that water for irrigation shall be used economically, and such use will be enforced by the courts. (*Van Camp v. Emery,* 13 Ida. 208, 89 Pac. 752.)

The conclusion of the court below is at variance with the experience and conclusions of impartial and disinterested investigators who testified herein or are referred to in our affidavits, as to the duty of water. No expert opinion can be secured which will sustain a finding that either an inch or one and one-tenth inches of water is necessary for the proper irrigation of an acre of land in Boise Valley. The conclusion of the court is based upon the interested opinions of witnesses who were not accustomed to the use of a definite quantity of water measured under a continuous flow, over a weir, or other measuring device, but whose experience was limited to the use of water taken at such times and in such quantities as they desired, without measurement or restriction. The opinions of the witnesses upon which the conclusion of the court was based did not relate to an economical

use of water, and did not relate to any standard of use, based upon the proper preparation of the land for irrigation or any rotation of crops including the raising of grain or fruit; but such testimony related to the irrigation of crops requiring the maximum amount of water without requiring a standard of preparation of the soil so as to permit an economical use.

We specially challenge allotment No. 2 (The Jacobs Canal Co., Ltd.), on the ground that it is not sustained by the evidence. The record fails to show application of the water to beneficial use for irrigation, and we challenge the date found by the court and assert that the water referred to is the property of other parties. There is no showing when the water used for irrigation by parties other than Davis was first diverted or applied to a beneficial use, or showing of the acreage irrigated, outside the Davis land, other than the report of the state engineer, and this acreage wholly fails to sustain an allotment of 1,000 inches of water. We also challenge allotment No. 30, originally owned by Perrault and Johnson, but represented on motion for new trial by Capital Water Company. As the decree now stands, absolute title to 2,500 inches of water is vested in this company, with a use limited to 739½ acres of land. "The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such purpose, the right ceases." (Sec. 3156, Rev. Stat.) The supreme court of California, in construing the above statute, has held that this would give the period of five years, the period of the statute of limitations in actions against realty. (*Smith v. Hawkins,* 110 Cal. 122, 42 Pac. 453.) Our law never contemplated that a water right might be held for the period of forty years without application to a beneficial use.

Smith & Scatterday, S. H. Hays, Frank Martin, Ira E. Barber, Karl Paine, A. A. Fraser, Griffiths & Griffiths, W. A. Stone, J. L. Niday, and H. E. Wallace, for Respondents.

Newly discovered evidence as ground for a new trial, in order to be sufficient, must (1) be such as will probably

change the result if a new trial is granted; (2) must have been discovered since the trial; (3) must be such as could not have been discovered before the trial by the exercise of due diligence; (4) must be material to the issue; (5) must not be cumulative to the former issue, and (6) must not be merely impeaching or contradicting the former evidence. (*People v. Priori,* 164 N. Y. 459, 58 N. E. 668; Hayne on New Trial & Appeal, sec. 88, p. 252; *Howard v. Winters,* 3 Nev. 539; 1 Spelling's New Trial and App. Prac., pp. 344, 347; *Tate v. Tate,* 85 Va. 205, 7 S. E. 352; *Wallace v. Tumlin,* 42 Ga. 462; *Callahan v. Caffarata,* 39 Mo. 136.) Applications for new trial on the ground of newly discovered evidence must be looked on with suspicion and disfavor; the applicant must make a strong case, both in respect to diligence on his part in preparing for the trial and as to the truth and materiality of the new evidence, and that, too, by the best evidence that can be obtained. (*Black v. City of Lewiston,* 2 Ida. 276, 281, 13 Pac. 80; *Arnold v. Skaggs,* 35 Cal. 684; *Tibbett v. Sue,* 125 Cal. 544, 58 Pac. 160; *People v. Sutton,* 73 Cal. 243, 15 Pac. 86; *Baker v. Joseph,* 16 Cal. 180; *Spottiswood v. Weir,* 80 Cal. 448, 22 Pac. 289.)

"Applications for a new trial on the ground of newly discovered evidence are addressed to the discretion of the court below, and the action of the court below will not be disturbed except for an abuse of discretion, the presumption being that the discretion was properly exercised." (*Hall v. Jensen,* 14 Ida. 165, 93 Pac. 962; Hayne on New Trial and Appeal, sec. 87; *People v. Sutton, supra; Spottiswood v. Weir, supra; Hobler v. Cole,* 49 Cal. 250; *State v. Brooks,* 23 Mont. 161, 57 Pac. 1038; *People v. DeMasters,* 109 Cal. 607, 42 Pac. 236.)

Newly discovered evidence which is merely cumulative or designed to contradict witnesses is not sufficient to warrant a new trial. (*Hall v. Jensen, supra; Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638; *Flannagan v. Newberg,* 1 Ida. 78.)

Where the newly discovered evidence is expert testimony, the motion for a new trial should be denied. (*Sullivan v.*

*Dahlman* (N. Y.), 1 City Ct. Rep. 475; 37 Cent. Dig., p. 1120, par. (W).)

The question of costs of the state engineer, taxed generally and ratably, of which appellant complains, is *res· adjudicata,* having been fully determined by this court in the former appeal in this case. (*Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist.,* 14 Ida. 450, 94 Pac. 761.)

While the transcript in this case is large and undoubtedly involved considerable work, we find nothing in the affidavits filed by appellants to show diligence which in any manner justifies the lapse of time which did occur from the rendition of judgment in this case to the time the motion for new trial was passed upon by the court below, a period of two years, two and one-half months.

This court, in the case of *Smith v. American Falls Canal & Power Co.,* 15 Ida. 89, 95 Pac. 1059, held, after reviewing its former decisions and the provisions of our statute in regard to new trials, that it was the appellant's duty to have the statement settled in a reasonable time in the manner provided by statute, and, in the absence of a showing, fully explain the long delay in having a motion for a new trial heard and determined at the earliest practicable period, and that the appeal from the order would be dismissed where the appeal is taken from the order more than one year after the judgment. In that case sixteen months had elapsed between the date of the judgment and the hearing of motion for a new trial.

AILSHIE, J.—This action was instituted in the year 1902, for the purpose of determining and establishing the respective rights and priorities of the appropriators of the waters of Boise river. The judgment and decree was entered in January, 1906. An appeal was thereafter taken from the judgment and the case was heard in this court and the judgment was affirmed. (*Farmers' Co-operative Ditch Co. v. Nampa etc. Irr. Dist.,* 14 Ida. 450, 94 Pac. 761.) Certain of the defendants moved for a new trial and their motion was denied, and they have appealed from the order denying them a new trial.

Respondents have moved to dismiss this appeal on the grounds that the appellants are guilty of laches and negligence in the prosecution of their appeal. Appellants have made a showing which, we think, fully excuses them from the charge of negligence. This case involved a voluminous record, covering about 1,700 printed pages. It is shown by affidavit that it required a long period of time for the court stenographer to extend his notes and in the meanwhile discharge his regular duties as reporter. It also required considerable time for appellants to reduce the evidence to narrative form and, after they had done so and served respondents with a copy of their statement, it required something like half a year for the respondents to examine the same and serve their proposed corrections and amendments. In view of the showing made in this case, we are entirely satisfied that the appellants have prosecuted their appeal in good faith, and have made a sufficient showing to exempt them from the rule announced in *McCrea v. McGrew,* 9 Ida. 382, 75 Pac. 67, and reaffirmed in *Smith v. American Falls Canal & Power Co.,* 15 Ida. 89, 95 Pac. 1059. The motion to dismiss must be denied.

Respondents contend that under a stipulation that was entered into between the attorneys for the respective parties, appellants have waived any right which they might have had to question any of the findings of fact as made by the court. Respondent bases this contention on finding No. 5, which is as follows: "That a stipulation was entered into in this cause by and between counsel for the respective parties, whereby the complaint, answers and cross-complaints, and all pleadings filed in this cause should be, and the same are deemed to be, amended to conform to the facts as found by the court herein." We do not construe this finding as suggested and contended for by respondents. As we view this, the parties merely stipulated and agreed that the pleading filed by each party might be so amended as to cover such facts as the court might find had been proven in his favor. The stipulation could certainly not be construed so as to bind the pleader by facts that are found against him, and contrary to his

pleading and in conformity with the pleadings of his adversary.

The decree in this case covers 135 appropriations of water from the Boise river, and those appropriations cover lands aggregating about 135,000 acres. The chief complaint made by appellants is directed against that part of the findings, and likewise of the decree, reading as follows: "That the quantity of water required for the successful irrigation and cultivation of said lands, measured at the intake of the respective ditches under a four-inch pressure, is as follows: For bench lands, one inch per acre. For bottom lands, one and one-tenth inch per acre." Appellants contend that to award one inch per acre for bench lands and one and one-tenth inches per acre for bottom lands in the Boise Valley will invite and sanction waste in the use of water; whereas, the decrees of courts in water litigation should demand the highest possible duty for water. It must be remembered that this was not primarily a case determining the amount of water required to irrigate any particular tract of land; it was not an action between water users and consumers, but rather an action between the appropriators of water from the natural stream to determine the quantity of water to which each appropriator is entitled and the date from which his appropriation should run. The finding and decree as to the quantity of water per acre necessary for successful irrigation did not amount to an absolute decree of that quantity to each acre of land, but rather amounted to an ascertainment of the basis on which all the appropriations were decreed by the court. In other words, the court, after hearing all the evidence, concluded that he would divide the lands into two classes, one "bench lands" and the other "bottom lands"; for bench lands he would allow one inch per acre, measured at the intake, and for "bottom lands" one and one-tenth inches per acre, measured at the intake. While this finding and decree as to the duty of water would not be binding upon any users or consumers not made parties to the action, still it becomes important in this case, for the reason that it is made the measure of each appropriator's right as to quantity of water under his appropriation and diver-

sion. The appropriator is allowed to divert water from the stream sufficient to cover the reclaimed acreage under his canal at the rate of one inch or one and one-tenth inches per acre, according as the lands may be bench or bottom lands. The evidence introduced in this case for the purpose of establishing the duty of water under these several canals and appropriations was practically all purely guesswork and of the most unsatisfactory character. One after another of these witnesses testified that he had been using "about" a certain volume or quantity of water on his land, and he "thought" it was necessary to have "about" so much for the irrigation of his land. In nearly every instance when the witness was asked if he had ever measured the water and made tests as to the actual quantity of water used on a given tract of land, he said that he had not. A fair example of the evidence given in this case is that of a witness who testified that he had lived in Boise for forty years, and that he had been acquainted with the irrigation ditches that were built in the early 60's. He said: "I don't know anything about inches of water. . . . . I have made no investigation to determine how many inches of water it would take to irrigate an acre of land, either in vegetables or grass land." The witness followed this testimony by saying he would judge it would take about an inch to the acre. This was true with practically all the witnesses in the case. The trouble with the whole line of evidence given on this subject is that it was for all practical purposes worthless, and was not founded on any actual measurements or tests, but was purely guesswork as to the volume of water that had been used by the several witnesses. What evidence was given from actual tests and measurements shows a less quantity of water necessary per acre and consequently a higher duty for the water. Few of the witnesses appear to have ever seen water measured, or to know how large a stream of water and what grade or pressure it would take to measure a given number of inches. The first real and satisfactory tests or measurements that appear to have been made were made subsequent to the decree in this case in attempting to distribute the water in conformity therewith. Since the decree was entered, the water

commissioner and water-masters under him have made numerous tests and measurements, and a great number of affidavits have been filed on motion for a new trial. By these affidavits, made by the water commissioner and water-masters and other expert witnesses, it appears that it will be impossible to actually irrigate anything like as large an acreage under the decree in this case as had been previously irrigated by the several appropriators of the waters from this stream. It also appears from the affidavits that it will not be necessary or essential to apply as much water to the lands as this decree calls for. A controversy has arisen as to whether these affidavits constitute newly discovered evidence within the meaning of the statute. Viewed from one standpoint they may be so considered; from another viewpoint they could not be treated as newly discovered evidence. It was within the power of any of the litigants to have made measurements and tests and have produced the evidence thereof on the trial of this case. The water was in the stream, and the land was there for irrigation the same before the decree as afterward. On the contrary, these measurements and tests had never been made before, and, of course, did not exist at the time of the trial. Ordinarily, we should say that this does not constitute newly discovered evidence such as requires the granting of a new trial. We feel satisfied, however, from an examination of these affidavits and the whole record in this case, that a higher duty may be obtained from the water than that of an inch and an inch and one-tenth, respectively, per acre as provided for in this decree. The appellants are as guilty and blameworthy for the class of evidence that was introduced on the subject of the duty of water as are the respondents; they neither objected to the evidence produced by the respondents nor furnished a better class of evidence themselves on this subject; and there was, in fact, nothing left for the trial court to do but make its findings on such evidence as had been introduced. It is necessary, therefore, on this appeal to look to the affidavits presented on motion for a new trial in order to ascertain the real facts with reference to the duty of water on these lands.

It is the policy of the laws of this state, and it has been so declared from time to time by this court, to require the highest and greatest possible duty from the waters of the state in the interest of agriculture and other useful and beneficial purposes.

In *Abbott v. Reedy,* 9 Ida. 581, 75 Pac. 765, this court said: "The law only allows the appropriator the amount *actually* necessary for the useful or beneficial purpose to which he applies it. The inquiry was therefore not what he had used, but how much was actually necessary." This was said in reference to the quantity of water necessary to irrigate a given tract of land.

Again, in *Van Camp v. Emery,* 13 Ida. 208, 89 Pac. 752, in discussing a similar question, we said: "In this arid country the largest duty and the greatest use must be had from every inch of water in the interest of agriculture and home building."

After a somewhat extended and very careful examination of the record in this case, we are convinced that justice demands, and the record justifies, the granting of a new trial to the extent and for the purpose of determining the question as to the duty of water on the two classes of lands mentioned in this decree. For this purpose the court can hear the evidence of persons who are competent to testify on the subject and who can do so, not from guesswork or hearsay, but from actual measurements and tests and applications of the water to the lands irrigated under these appropriations. A new trial for this purpose can do no harm or injustice to anyone, and, on the other hand, if it should be found that even a very slight increase in the duty of water per acre can be had, it will, in the aggregate, amount to several thousand additional acres of land that may be irrigated.

In determining the duty of water, reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation. Economy must be required and demanded in the use and application of water. Water users should not be allowed an excessive quantity of water to compensate for and counterbalance their neglect or indolence in the preparation of their lands for the success-

ful and economical application of the water. One farmer, although he has a superior water right, should not be allowed to waste enough water in the irrigation of his land to supply both him and his neighbor simply because his land is not adequately prepared for the economical application of the water.

Special complaint is made by appellants against allotments numbered 2 and 30, respectively, on the ground that they are not supported by the evidence. Allotment No. 2 is to the Jacobs Canal Co., Ltd., dating from June 1, 1864, for the quantity of 1,000 inches. Allotment No. 30 is to Joseph Perrault and R. Z. Johnson, dating from May 1, 1866, for the quantity of 2,500 inches. Very little evidence was introduced as to the amount of water covered by these appropriations or as to the extent of the use and application of water under these claims. There is but little conflict, however, in what evidence has been introduced on the subject, and we think it sufficient to establish their respective priorities as well as the amount of water decreed to each, subject, however, to the same exception with reference to the duty of water as hereinbefore treated, which applies to all the appropriators whose rights are involved in this action. A new trial will be granted as to these appropriators the same as to all other appropriators, for the purpose only of establishing the duty of water to be used and applied under and in pursuance of the respective appropriations. These two water rights are used primarily for sale, rental and distribution for municipal and domestic purposes, and the sprinkling of streets and lawns and irrigating trees and shrubbery and flushing sewers in Boise City. These allotments, numbered 2 and 30, have been properly established and decreed and are hereby affirmed. But the duty of water to be used under such allotments, and the necessity for its application and the extent of its use, will be subjects of examination on a new trial in establishing the duty of water to be used and applied under these respective priorities. While the decree does not specifically designate the amount of water to be applied to a city lot, yet it has been contended on the part of these appropriators that it was necessary to apply ten inches to each

town lot.   That quantity of water is manifestly excessive for use on so small a tract of land.

Appellants complain of the action of the court in taxing against them a *pro rata* share of the costs of survey and maps made by the state engineer.   The ground upon which this objection is urged is that the maps and plats introduced on behalf of the plaintiff were not certified by the state engineer, and that they were not accompanied by any showing either by way of certification or oral evidence that they were maps prepared by the state engineer's office.   We do not think this objection is well taken.   In *Boise Irrigation & Land Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321, this court held that under the irrigation law the district judge had the power to order a survey of the lands under these several canals, and that the costs of such survey could be properly apportioned to the several parties to the action.   In *Farmers' Co-operative Ditch Co. v. Nampa & Meridian Irr. Dist.,* 14 Ida. 450, 94 Pac. 761, this court again held that such expense was a proper charge to be apportioned among the litigants in proportion to the quantity of water allotted to each, and that it was not necessary to file a cost bill for the same.   It is true that, so far as the record is concerned in this case, it does not show any certification by or on the part of the state engineer to these maps and plats.   In the course of a trial, ordinarily where one party offers exhibits in evidence, it is necessary and essential that they be properly identified.   This is a different case, however, as these maps and plats were made under authority of a special statute and by specific order and direction of the trial court.   It was not necessary that they should be introduced in evidence at all by any of the litigants in order to justify the court in directing that the expense incurred in making the same be apportioned among the litigants and taxed as costs.   The fact that the court did so raises the presumption that the court had information which satisfied him that these plats and maps were the ones ordered, and that they had been made by or under the direction of the state engineer.   In a case like this we think the presumption, in the first place, is in favor of the theory that the maps and plats are authentic,

and emanated from the source contemplated by the statute and the order of the court. If, in fact, they did not, the litigant who denies their authenticity may readily show their falsity or spurious character. They are made for the use and benefit of the court as well as for any litigant who desires to refer to or use the same. Another and different question would arise if any particular litigant should show that as to his lands the maps and plats were grossly incorrect and that the survey had been incorrectly made.

We conclude that the court properly taxed the costs of making this survey and the maps and plats to the several litigants in the case.

There is no other question presented that requires our further discussion or consideration in this opinion. The judgment will be affirmed as to the respective rights and priorities of the several claimants and appropriators whose rights have been litigated in this case. A new trial will be granted for the sole and only purpose of determining the duty of water on the two classes of lands involved in this action, namely, bench and bottom lands. This order for a new trial will also cover and include the question of the duty of water under allotments numbered 2 and 30, being the appropriations for the Jacobs Canal Co., Ltd., and the Joseph Perrault and R. Z. Johnson canal, dating from May 1, 1866. The question as to the duty of water under those ditches and appropriations will be retried. On a retrial the court will hear such competent evidence as may be produced touching the duty of water to be applied to lands in Boise Valley and lying under the various canals taking water from the Boise river. The court in its decree should also determine and decree what lands are bench and what bottom lands.

In the event the court, after hearing the evidence, should determine upon fixing a higher duty for water than allowed by the former findings and decree, and to therefore reduce the amount per acre, it will modify the findings and decree as to each appropriator in proportion as it reduces the quantity per acre below that fixed in the former decree.

The costs of this appeal will be taxed against the several appellants, and the respondents who have appeared in this

court, in proportion to the quantity of water allotted to each under the decree as originally entered in this case.

Sullivan, C. J., concurs.

Stewart, J., did not sit at the hearing and took no part in the decision.

(June 16, 1909.)

ON PETITION FOR REHEARING.

SULLIVAN, C. J.—A petition for rehearing has been filed in this case by the Capital Water Co., asking for a modification of the decision of this court in so far as the same affects said company.

In the former opinion, this court held that the evidence was sufficient to sustain finding No. 9, wherein it was found, among other things, by the trial court that the respondent, the Capital Water Co., had diverted and appropriated from Boise river 2,500 inches of water. On a re-examination of this matter we find that the evidence sustaining that finding is uncontradicted, and is amply sufficient to sustain the finding.

This court set aside finding No. 3, which finding is as follows:

"That the quantity of water required for the successful irrigation and cultivation of said lands, measured at the intake of the respective ditches under a four-inch pressure, is as follows:

"For bench lands, one inch per acre;

"For bottom lands, one and one-tenth inch per acre"; and ordered a new trial on the question there involved. That finding applies to the irrigation and cultivation of acreage tracts, and the former opinion of this court must be so modified as to make the new trial apply to acreage tracts and not to the irrigation of certain town lots, street sprinkling, parking purposes, sewerage, domestic and power purposes. On a re-examination of the record, we conclude that the judgment of the trial court should be affirmed except as to the question of the duty of water for the irrigation and cultivation of agricultural lands and acreage tracts. The question of the duty of water for acreage purposes is the only

question to be determined in a new trial so far as the duty of water is concerned.

The former opinion of this court is modified to the extent above indicated, and as stated in the former opinion, "A new trial will be granted for the sole and only purpose of determining the duty of water on the two classes of lands involved in this action, namely, bench lands and bottom lands."

A rehearing is denied.

Counsel for the Eureka Water Co. has also filed a petition for rehearing in this case, and takes the position that the trial court has only fixed the maximum amount of water to which the respective parties are entitled, in the order of their priority, and that under the law it makes no particular difference what the court may fix as the maximum amount to which the parties are entitled, as they are only entitled to sufficient to supply their necessities in any event, and it is conceded by counsel that the questions he desires to present on a rehearing were not presented nor argued to the court on the appeal.

Regardless of the court's views upon several of the questions suggested by counsel in his petition for rehearing, the court considers the maximum amount of water established by the decree to which each of the respective parties is entitled a very important question. It certainly is important to all subsequent appropriators, whether prior appropriators be given an inch or a half inch of water to the acre. We are satisfied from an examination of the record in this case that the maximum amount of water to be allowed each appropriator is too large and in excess of the amount that may in any event be necessary for the successful irrigation of the lands under consideration.

The court is not inclined to grant a rehearing on questions that were not presented on the appeal, and for that reason a rehearing is denied.

Ailshie, J., concurs.

Stewart, J., took no part in the decision of the petition for a rehearing.