### MARSTERS et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. September 5, 1916.)

No. 2654.

WATERS AND WATER COURSES ☞224—RIGHTS OF APPROPRIATORS OF WATER FOR IRRIGATION—IDAHO STATUTES.

Rev. Codes Idaho, § 3274 et seq., as amended in 1909 (Laws 1909, p. 327), providing for the creation of water districts, the election of water masters, etc., expressly provide that they shall not apply to streams or water supplies "whose priorities of appropriation and use have not been adjudicated by the courts having jurisdiction thereof," and where the priorities of appropriators from a stream and the amounts to which they are severally entitled have not been so adjudicated by a court, there can be no legal organization of a water district, and no persons claiming to be officers of such a district have any authority to make such determination and to act on it by interfering with the irrigation works of any user.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 315, 316; Dec. Dig. ☞224.]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the United States against Elias Marsters and E. F. Lakin. Decree for the United States, and defendants appeal. Affirmed.

Joseph H. Peterson, Atty. Gen., of Idaho, E. G. Davis, of Boise, Idaho, T. C. Coffin, of Pocatello, Idaho, and Herbert Wing, of Boise, Idaho, for appellants.

J. L. McClear, U. S. Atty., J. R. Smead, Asst. U. S. Atty., and B. E. Stoutemyer, Counsel U. S. Reclamation Service, all of Boise, Idaho.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The Boise river is one of the streams of Idaho, the waters of which are used in part for the purpose of irriga-

tion in Ada and Canon counties of that state, and the United States is one of the appropriators, under an application filed by certain citizens and residents of the state with its state engineer for permit to divert and appropriate 5,200 cubic feet per second of the said waters for the irrigation of certain lands within the state, now known as the "Government Boise project." The application having been approved by the state engineer and a permit granted to the applicants, the latter was assigned to the Secretary of the Interior, who, under and in pursuance of the Act of Congress of June 17, 1902, c. 1093, 32 Stat. 388 (Comp. St. 1913, §§ 4700–4708), known as the Reclamation Act, caused surveys to be made and work to be done to the extent of appropriating and using 1,647 second feet of the waters of the river, with the approval of the state engineer, in pursuance of the project, the date of the government's appropriation being December 4, 1903. Prior to that date, however, there had been and then were in existence 134 prior appropriations of the waters of the river, for the purpose of adjudicating the rights and priorities of which an action had been commenced in the preceding year of 1902 in one of the courts of the state, to which action the United States therefore could not have been made a party, and has not since been made a party. The United States diverted the water so appropriated and claimed by it by means of headgates and a canal constructed on its own land, and was so using it in July, 1913, when the appellants, acting, respectively, as water commissioner and water master of water division No. 3 of the state of Idaho, and claiming that it was necessary to deprive the government of a part of the water which it was thus diverting, in order that prior appropriators might be supplied with the water to which they were entitled, first applied to the manager of the government project to turn into the river the amount so claimed to be so needed, which request being refused, the appellants, acting under the advice of the Attorney General of the state, on the 11th day of July, 1913, entered upon the property of the United States and cut the locks fastening the said gates, took a part of the water then being diverted and used by the government, and proceeded to regulate the flow of the water of the river as they claimed it should be. The next day, July 12, 1913, the United States commenced in the court below the present suit against the appellants as defendants, to recover damages for their action and an injunction restraining such acts. The court below gave the complainant judgment for $1,000 besides costs, from which judgment the present appeal was taken.

Sections 3274, 3275, and 3277 of the Revised Codes of Idaho as amended in 1909 (Session Laws 1909) are as follows:

"Sec. 3274. The board of irrigation shall divide the state into water districts in such manner that each public stream and tributaries, or independent source of water supply, shall constitute a water district; provided, that any stream or water supply, when the distance between the extreme points of diversion thereon is more than forty (40) miles, may be divided into two (2) or more water districts; and provided, that any stream tributary to another stream may be constituted into a separate water district when the use of the waters therefrom does not affect or conflict with the rights to the use of the waters of the main stream; and provided, that any stream may be divided into two (2) or more water districts, irrespective of the distance between tne

extreme points of diversion, where the use of the waters of such stream by appropriators in one district does not affect or conflict with the use of the waters of such stream by appropriators outside such district; and, provided, that this section shall not apply to streams or water supplies whose priorities of appropriation and use have not been adjudicated by the courts having jurisdiction thereof.

"Sec. 3275. There shall be held on the first Monday of March of each year, commencing at 2 o'clock p. m., a meeting of all persons owning or having the use of an adjudicated right, in the waters of the stream or water supply comprising such district. Such meeting shall be held at some place within the water district, convenient to a majority of those entitled to vote thereat, which place shall be designated by the water commissioner of the district, and he shall, between January first and February first of each year, file such designation with the county auditor of the county or counties within which such water district is situated and shall notify by mail all persons, companies, or corporations known by him to own or claim the use of the waters of such district, and should said water commissioner fail to file such designation by February first, the district judge of the district within which such water district or portion thereof, is situated, shall, upon application of some interested person, designate the place of holding such meeting, and in case the first Monday in March has passed, such district judge may also designate the time of holding such meeting. At such meeting there shall be elected a water master for such water district, and such other regular assistants as such meeting shall deem necessary, and such meeting shall, prior to the election of such water master and assistants, fix the compensation to be paid them, such compensation not to exceed four dollars ($4.00) per day, during the time actually engaged in the performance of their duties. At such meeting each person present owning or having the use for the ensuing irrigation season of any adjudicated right equal to ten (10) inches of water in the stream or water supply comprising such water district shall be entitled to one (1) vote. Such meeting shall choose a chairman and secretary and shall determine the manner and method of electing water masters and assistants. Within five (5) days after such meeting the chairman and secretary shall forward a certified copy of the minutes of such meeting to the water commissioner of the district; provided, that a corporation shall be considered a person for the purpose of this section and shall cast its vote by some one to be designated by the corporation; and provided, that each stockholder in said corporation shall be entitled to as many votes as he shall have units of ten miners' inches of water, regularly adjudicated, in the stream or water supply comprising such water district; and provided, that should said meeting not be held or not choose a water master, or not fix the compensation thereof, then the water commissioner of the district may appoint such water master, and fix his compensation, not exceeding four dollars ($4.00) per day. The water commissioner may, at any time, remove any water master within his division for failure to perform his duty as such water master, upon complaint in that respect being made to him in writing by any person owning or having the right to the use of an adjudicated right in such district, and the water commissioner may appoint a successor for the unexpired term. Before entering upon the duties of his office, said water master shall take and subscribe an oath before some officer authorized by the laws of the state to administer oaths, to faithfully perform the duties of his office, and shall file with the clerk of the district court in the county in which said water master resides, said oath and his official bond in the penal sum of five hundred dollars ($500.00), with not less than two (2) sureties, to be approved by the judge of the probate court of the county in which he resides, and conditioned for the faithful discharge of the duties of his office."

"Sec. 3277. It shall be the duty of said water master to distribute the waters of the public stream, streams, or water supply, comprising his water district, among the several ditches taking water therefrom according to the prior rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut and fastened, under the direction of the water commissioner of his district, the headgates of ditches heading from such stream,

streams or water supply, when in times of scarcity of water it is necessary so to do in order to supply the prior rights of others in such stream or water supply; provided, that any person or corporation claiming the right to the use of the waters of the stream or water supply comprising a water district, but not owning or having the use of an adjudicated right therein, shall, for the purpose of distribution, during the scarcity of water, be held to have a right subsequent to the adjudicated rights in such stream or water supply, and the water master shall close all headgates of ditches having no adjudicated right if necessary to supply adjudicated rights in such stream or water supply."

The foregoing statutory provisions constitute what is claimed to be authority for the acts of the water commissioner and water master complained of. It is readily seen that it is expressly declared in the last proviso of section 3274 that the section "shall not apply to streams or water supplies whose priorities of appropriation and use have not been adjudicated by the courts having jurisdiction thereof"; that by the provisions of section 3275 the election of the water master and his assistants therein authorized is only applicable to such districts as are authorized to be established by the preceding section 3274, and that such officers are authorized to be elected only at "a meeting of all persons owning or having the use of an adjudicated right, in the waters of the stream or water supply comprising such district," that is to say, such district as is authorized by the preceding section 3274, and at which meeting only such persons as own or have "the use for the ensuing irrigation season of any adjudicated right equal to ten (10) inches of water in the stream or water supply comprising such water district" shall be entitled to vote, and such person shall be entitled to one vote only; there being a proviso in section 3275 to the effect that a corporation shall be considered a person for the purpose of that section and shall cast its vote by some one to be designated by the corporation, with a further proviso—

"that each stockholder in said corporation shall be entitled to as many votes as he shall have units of ten miners' inches of water, regularly adjudicated, in the stream or water supply comprising such water district."

It is plain, we think, from those express declarations, that the statutory provisions in question have no application to streams or water supplies whose priorities and use have not been adjudicated by a court having jurisdiction thereof; in other words, that such an adjudication is essential to the legal organization of any district embracing such waters, and therefore essential to any authority in any officer of such district. Not only is such the necessary effect, in our opinion, of the language of the statute, but the decision of the Supreme Court of Idaho in the case of Stethen v. Skinner, 11 Idaho, 374, 82 Pac. 451, proceeded upon that view and adjudged that in a district organized under the preceding but similar statute the water master's proper guide in the distribution of waters is the decree of the court and not its findings of fact.

To hold that the water master or water commissioner, or both combined, can determine how much water an appropriator is legally entitled to would obviously be to hold, in effect, that those executive officers can deprive an appropriator of his property without due process

of law; for there can be no doubt that the use of water for the purposes of irrigation is not only a property right, but, according to the decisions of the Supreme Court of Idaho, such right is real property appurtenant to the land so irrigated. Taylor v. Hulett, 15 Idaho, 265, 97 Pac. 37, 19 L. R. A. (N. S.) 535; Nielson v. Parker, 19 Idaho, 727, 115 Pac. 488; Gard v. Thompson, 21 Idaho, 485, 123 Pac. 497. In the case first cited the court held that a suit to ascertain and determine the extent and priority of a water right and appropriation partakes of the nature of an action to quiet title to real estate. From what has been said it is manifest that the proper disposition of the present appeal turns upon the true interpretation of the decisions of the Supreme Court of Idaho in the case entitled Farmers', etc., D. Co. v. Nampa, etc., Irr. Dist., 14 Idaho, 450, 94 Pac. 761, and Farmers', etc., Co. v. Riverside Irr. Dist., 16 Idaho, 525, 102 Pac. 481. The first of those cases was thus stated by the court in delivering its opinion:

"This action was instituted by the Farmers' Co-operative Ditch Company against numerous appropriators of water from the Boise river, for the purpose of adjudicating the priorities among the several appropriators. The complaint was filed on August 20, 1902. The defendants answered, and also filed cross-complaints, setting up their several rights, appropriations, and priorities, and asking for affirmative relief, decreeing their several appropriations and the times from which they should date. * * * On January 18, 1906, findings of fact and conclusions of law and judgment were made and entered. This appeal is from the judgment, and is prosecuted by the Nampa & Meridian irrigation district, which is the successor in interest and assignee of the Boise City Land & Water Company."

The first contention urged by the appellant in that case was that the trial court erred in not finding as to all the individual users of water under the various ditches and canals, and the amount of water used by each and necessarily required for the irrigation of his land, and the particular description of the land upon which he was using and entitled to use water. The court on that appeal decided against that contention. The next question presented on that appeal was whether section 38 of the act of March 11, 1903 (Laws 1903, p. 250) of the state of Idaho, was—

"applicable to water users who have no right by appropriation, but whose right is founded upon one of use, and is purely a rental right as distinguished from a right by appropriation and diversion."

The court in that case held that, in view of certain facts referred to in its opinion, the appellant could not "be heard for the first time on such objections in urging a reversal of the judgment." The Supreme Court then proceeded in its opinion as follows:

"In paragraph 3 of the findings of fact, the court made a general finding as to the quantity of water required for the successful irrigation of the lands irrigated from the Boise river. It found that 'for bench lands 1 inch per acre' is necessary, and that 'for bottom lands $1^1/_{10}$ inches per acre' is necessary. The appellant assigns this finding as error, on the ground that the court has not described the lands he terms 'bench lands' and those he terms 'bottom lands.' The appellant is in no position on this appeal to question the finding for the following reason: This finding No. 3 is merely a finding of the basis on which the court has concluded to apportion the water, the quantity of water per acre he intended to allow the several appropriators. When the

court came to making the specific findings as to the number of inches of water each appropriator was entitled to, he found the date from which such appropriator was entitled to take his water and the number of inches to which he was entitled for the lands described in his complaint or cross-complaint. The latter finding was presumably made upon the basis of one inch for bench lands and $1^1/_{10}$ inches for bottom lands. We assume the court followed that standard. If, in fact, he has not, the failure to do so must appear from the evidence, and would necessarily have to be reviewed on the motion for a new trial or appeal from an order denying the same. On this appeal, we must presume that the court made its decree to the various appropriators on this basis. No evidence has been brought here. If, on the contrary, the basis or standard laid down by the court as the one it intended to follow is not supported by the evidence, that too, must be determined from the evidence, and cannot be passed upon on this appeal from the judgment."

And, after referring to the question of the expense of making certain surveys and maps by the state engineer, the court affirmed the judgment appealed from. The foregoing makes plain what was before the Supreme Court of Idaho and what it decided in the case first cited, one of which things was that the finding of the trial court that 1 inch of water per acre was necessary for bench lands and $1^1/_{10}$ inches for bottom lands was merely a finding of the basis on which that court had concluded to apportion the water, and that whether or not the court had acted on that basis could only be reviewed on motion for a new trial or on appeal from an order denying the same. When the same case subsequently came before the same court, it was on an appeal by certain of the defendants from an order denying them a new trial. 16 Idaho, 525, 530, 102 Pac. 481. After disposing of a motion· to dismiss the appeal and a certain stipulation entered into between the attorneys for the respective parties, the court then said:

"The decree in this case covers 135 appropriations of water from the Boise river, and those appropriations cover lands aggregating about 135,000 acres. The chief complaint made by appellants is directed against that part of the findings, and likewise of the decree, reading as follows: 'That the quantity of water required˜ for the successful irrigation and cultivation of said lands, measured at the intake of the respective ditches under a 4-inch pressure, is as follows: For bench·lands, 1 inch per acre. For bottom lands, $1^1/_{10}$ inches per acre.' ·Appellants contend that to award 1 inch per acre for bench lands and $1^1/_{10}$ inches per acre for bottom lands in the Boise Valley will invite and sanction waste in the use of water; whereas, the decrees of courts in water litigation ˏshould demand the highest possible duty forˑwater. It must be remembered that this was not·primarily a case determining the amount of water required to irrigate any particular tract of land; it was not an action between water users and consumers, but rather an action between the appropriators of water from the natural stream to determine the quantity of water to which each appropriator is entitled and the date from which his appropriation should run. The finding and decree as to the quantity of water per acre necessary for successful irrigation did not amount to an absolute decree of that quantity ˎto each acre of land, but rather amounted to· an ascertainment of the basis on which all the appropriations were decreed by the court. In other words, the court, after hearing all the evidence, concluded ·that he would divide the lands into two classes; one 'bench lands' and the other 'bottom lands.' For bench lands he would allow 1 inch per acre, measured at the intake, and for 'bottom lands' $1^1/_{10}$ inches per acre, measured at the intake. While this finding and decree as to the duty of water would not be binding upon any users or consumers not made parties to the· action, still it becomes important in this case, for the reason that it is made the measure of each appropriator's right as to quantity of water under his appropriation and diversion. The appropriator is allowed to divert water from·

the stream sufficient to cover the reclaimed acreage under his canal at the rate of 1 inch or $1^1/_{10}$ inches per acre, according as the lands may be bench or bottom lands. The evidence introduced in this case for the purpose of establishing the duty of water under these several canals and appropriations was practically all purely guesswork and of the most unsatisfactory character. One after another of these witnesses testified that he had been using 'about' a certain volume * * * of water on his land, and he 'thought' it was necessary to have 'about' so much for the irrigation of his land. In nearly every instance when the witness was asked if he had ever measured the water and made tests as to the actual quantity of water used on a given tract of land, he said that he had not. A fair example of the evidence given in this case is that of a witness who testified that he had lived in Boise for 40 years, and that he had been acquainted with the irrigation ditches that were built in the early 60's. He said: 'I don't know anything about inches of water. * * * I have made no investigation to determine how many inches of water it would take to irrigate an acre of land, either in vegetables or grass land.' The witness followed this testimony by saying he would judge it would take about an inch to the acre. This was true with practically all the witnesses in the case. The trouble with the whole line of evidence given on this subject is that it was, for all practical purposes, worthless, and was not founded on any actual measurements or tests, but was purely guesswork as to the volume of water that had been used by the several witnesses. What evidence was given from actual tests and measurements shows a less quantity of water necessary per acre, and consequently a higher duty for the water. Few of the witnesses appear to have ever seen water measured, or to know how large a stream of water and what grade or pressure it would take to measure a given number of inches. The first real and satisfactory tests or measurements that appear to have been made were made subsequent to the decree in this case in attempting to distribute the water in conformity therewith. Since the decree was entered, the water commissioner and water masters under him have made numerous tests and measurements, and a great number of affidavits have been filed on motion for a new trial. By these affidavits, made by the water commissioner and water masters and other expert witnesses, it appears that it will be impossible to actually irrigate anything like as large an acreage under the decree in this case as had been previously irrigated by the several appropriators of the waters from this stream. It also appears from the affidavits that it will not be necessary or essential to apply as much water to the lands as this decree calls for. A controversy has arisen as to whether these affidavits constitute newly discovered evidence within the meaning of the statute. Viewed from one standpoint, they may be so considered; from another viewpoint they could not be treated as newly discovered evidence. It was within the power of any of the litigants to have made measurements and tests and have produced the evidence thereof on the trial of this case. The water was in the stream, and the land was there for irrigation the same before the decree as afterward. On the contrary, these measurements and tests had never been made before, and, of course, did not exist at the time of the trial. Ordinarily, we should say that this does not constitute newly discovered evidence such as requires the granting of a new trial. We feel satisfied, however, from an examination of these affidavits and the whole record in this case, that a higher duty may be obtained from the water than that of an inch and an inch and one-tenth, respectively, per acre as provided for in this decree. The appellants are as guilty and blameworthy for the class of evidence that was introduced on the subject of the duty of water as are the respondents; they neither objected to the evidence produced by the respondents nor furnished a better class of evidence themselves on this subject; and there was, in fact, nothing left for the trial court to do but make its findings on such evidence as had been introduced. It is necessary, therefore, on this appeal to look to the affidavits presented on motion for a new trial in order to ascertain the real facts with reference to the duty of water on these lands. It is the policy of the laws of this state, and it has been so declared from time to time by this court, to require the highest and greatest possible duty from the waters of the state in the interest of agriculture and other useful and beneficial purposes."

And after referring to certain of its preceding decisions, the court proceeded as follows:

"After a somewhat extended and very careful examination of the record in this case, we are convinced that justice demands, and the record justifies, the granting of a new trial to the extent and for the purpose of determining the question as to the duty of water on the two classes of lands mentioned in this decree. For this purpose the court can hear the evidence of persons who are competent to testify on the subject and who can do so, not from guesswork or hearsay, but from actual measurements and tests and applications of the water to the lands irrigated under these appropriations. A new trial for this purpose can do no harm or injustice to any one, and, on the other hand, if it should be found that even a very slight increase in the duty of water per acre can be had, it will, in the aggregate, amount to several thousand additional acres of land that may be irrigated. In determining the duty of water, reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation. Economy must be required and demanded in the use and application of water. Water users should not be allowed an excessive quantity of water to compensate for and counterbalance their neglect or indolence in the preparation of their lands for the successful and economical application of the water. One farmer, although he has a superior water right, should not be allowed to waste enough water in the irrigation of his land to supply both him and his neighbor simply because his land is not adequately prepared for the economical application of the water."

In reversing the order appealed from the court further said:

"A new trial will be granted for the sole and only purpose of determining the duty of water on the two classes of lands involved in this action, namely, bench and bottom lands. This order for a new trial will also cover and include the question of the duty of water under allotments numbered 2 and 30, being the appropriations for the Jacobs Canal Company, Limited, and the Joseph Perrault and R. Z. Johnson canal, dating from May 1, 1866. The question as to the duty of water under those ditches and appropriations will be retried. On a retrial the court will hear such competent evidence as may be produced, touching the duty of water to be applied to lands in Boise Valley and lying under the various canals taking water from the Boise river. The court in its decree should also determine and decree what lands are bench and what bottom lands. In the event the court, after hearing the evidence, should determine upon fixing a higher duty for water than allowed by the former findings and decree, and to therefore reduce the amount per acre, it will modify the findings and decree as to each appropriator in proportion as it reduces the quantity per acre below that fixed in the former decree."

The mere reading of the foregoing opinions makes clear, we think, that while the Supreme Court of Idaho affirmed the judgment of the lower court in so far as it fixed and adjudged the respective dates of the appropriations of the 134 prior appropriators of the waters of Boise river who were parties to the suit, it vacated the judgment of the court below in so far as it fixed and adjudged the amount of the water of the river which the respective prior appropriators are entitled to divert and use, and remanded the cause for a new trial of that question.

It being conceded that such new trial has not been had, and there being no decision of any court adjudging the amount of the waters in question which the respective prior appropriators are entitled to divert and use, we regard it as clear that the appellants were without authority to enter upon the property of the appellee, break the locks of its headgates, and undertake to determine the amount of the waters in question to which that appropriator was entitled, and that for the

damages resulting from those unlawful acts the learned judge of the court below rightly gave the appellee judgment, with costs.

The judgment is affirmed.