## N. J. Hall v. J. M. Carter.

Decided October 14, 1903.

**1.—Practice on Appeal—Verdict—Evidence.**

The appellate court will not interfere with the verdict of a jury predicated upon conflicting testimony if the supporting proof be sufficient to authorize it.

**2.—Riparian Proprietors—"Arid" Localities—Charge.**

Charge of the court defined "arid portions of the State," as follows: "By arid portions of the State is meant those portions of the State where rainfall is insufficient for agricultural purposes, and irrigation therefore necessary. Where the rainfall is sufficient for agricultural purposes that portion is not within the arid region, even though irrigation might or would increase the productiveness of the soil." Held, sufficient; but note the opinion arguendo on the subject.

**3.—Same—Prescription.**

That a prescriptive right to the use of waters of a stream may be acquired is no longer an open question. The right is enforcible against riparian proprietors on the stream below when the water has been continuously used for ten years under a claim of right,—following Mud Creek Irrigation Co. v. Vivian, 74 Texas, 170. But it is equally well established that "the right acquired by prescription is only commensurate with the right enjoyed. The extent of the enjoyment measures the right;" and the use of a given amount, no matter how long continued, would give no right to use a greater quantity. The important, as it is the difficult, matter of determination in such cases, is the extent of such use. See this case in illustration.

**4.—Same—Injunction.**

The issues and answers in this case established the fact that while appellant and his predecessors in title had for more than ten years continuously, peaceably and adversely used a portion of the waters for irrigation, that their use had never been so extensive as to prevent the water from flowing in some quantity down to the south line of appellee's land, but that in June, 1902, the water ceased entirely to flow down to appellee's land, and that this was due to the use of the water by appellant for irrigation. Under this state of case the trial court properly held that appellant's prescriptive right did not go to the extent of the use exercised by him in 1902, and that to this extent the appellee was entitled to injunction.

Appeal from the District Court of San Saba. Tried below before Hon. John W. Goodwin.

*W. M. Allison* and *N. A. Rector,* for appellant.

*Rector & Brown* and *Leigh Burleson,* for appellee

STREETMAN, Associate Justice.—The purpose of this suit was to enjoin the appellant from using for irrigation the waters of a certain creek, known as Simpson Creek, to such an extent as to prevent said water from flowing down to a 300-acre tract of land belonging to appellee, and situated on said creek.

Simpson Creek is a tributary of the San Saba River, several miles in length, running from south to north. Above a certain point it is known as Dry Simpson Creek, and that part of it does not appear to have been a stream or water course. Appellee's 300-acre tract of land, known as the Jim Brown tract, lies at the mouth of this creek,

and runs back up the creek on its western side about a mile, and a small part of the tract extends across the San Saba and Red Bluff road.

On this portion of the land Simpson Creek originally received as a tributary on its eastern side, Fleming Spring Branch. Many years ago this branch was diverted in order to be made serviceable for irrigation, and was made to empty into Simpson Creek about 1000 varas above its original mouth, on lands now owned by Mrs. Carroll.

This Fleming Branch is about 1600 varas long from its mouth to its source, which is a spring. This spring is situated on the lands of appellant, which extends some distance on both sides of the Fleming Branch towards its mouth. Other persons, not parties to this litigation, own the lands along Fleming Branch and Simpson Creek, between appellant and appellee.

Appellee claimed that Simpson Creek, where it passed along by said 300-acre tract of land, was a water course, and that he needed and was entitled to use the waters of said creek for domestic purposes and stock water, and that appellant had, in the year 1902, diverted the waters of Fleming Branch to such an extent for irrigation on his land as to stop the flow of said water along said 300-acre tract; it being also alleged that the county and the place where these lands were situated was not in an arid portion of the State.

Appellant, among other defenses, plead a right by prescription to use all the waters of said creek for the purposes of irrigation.

Special issues were submitted to the jury, these issues and the answers thereto being as follows:

"No. 1. Is that portion of Simpson Creek above the mouth of Fleming Spring Branch a water course or stream? Answer: No."

"No. 2. Is Fleming Spring Branch a water course or stream? Answer: Yes."

"3. Into what creek or channel does Fleming Spring Branch discharge its waters, if any? Answer: Channel of Dry Simpson.

"4. State whether or not that portion of Simpson Creek between the mouth of Fleming Spring Branch and the mouth of Barnett's Creek is a water course, or was a water course on or about June 22, 1902? Answer: Yes."

"5. Where is the mouth of Simpson Creek, or that portion of it called Dry Simpson? Answer: On east line of Taylor tract, just south of San Saba and Lometa road."

"6. Has that portion of Simpson Creek lying between the mouth of Fleming Spring Branch, excluding Fleming Spring Branch, any definite source? Answer: No."

"7. State whether or not that portion of Dry Simpson Creek lying between its mouth and the mouth of Fleming Spring Branch is a water course, or was such on and prior to June 22, 1902. Answer: Yes."

"8. Is San Saba County situated in the arid portion of the State of Texas? Answer: No."

"9. Is that portion of San Saba County in which defendant's surveys 595 and 596 lie, situated within the arid portion of the State? Answer: No."

"10. State whether or not defendant Hall and those under whom he claims, and whose estate and title he has to surveys Nos. 595 and 596, have continuously, peaceably and adversely diverted and used the water from Fleming Spring Branch in irrigating the farm on said surveys Nos. 595 and 596 for a period of ten years before the 11th day of July, 1902? Answer: Yes."

"11. When defendant, or those under whom he claims the McAnelly farm, irrigated the same, and during the time such irrigation was in progress, would the water in Fleming's Creek flow in its channel? If so, how far would it flow? With reference to plaintiff's 300-acre tract of land, where would the water flow? Answer: Yes, it would flow down Dry Simpson or its present channel to the junction of its old channel with its present channel on the Taylor tract of land south of public road."

"12. Have the persons under whom defendant claims and holds title to his farm, annually, peaceably and adversely to plaintiff Carter, for more than ten years prior to July 11, 1902, diverted the water of Fleming Branch, and irrigated said farm to the extent that waters of said branch during said time ceased to flow down to or opposite plaintiff's land in question, while such irrigation was in progress? Answer: No."

"13. If you have in answer to the preceding questions found that defendant and those under whom he claims have for ten years prior to July 11, 1902, continuously used the waters of Fleming Spring Branch for the purpose of irrigating defendant's land, then state whether or not during said period, or any part thereof, the water was used by defendant and his vendors, by or with the permission of plaintiff or the vendors of plaintiff, or the agents or tenants of the vendors of plaintiff? Answer: No; not by permission of either."

"14. If you, in answer to the preceding questions, found that defendant and those under whom he claims have for ten years prior to July 11, 1902, continuously, peaceably and adversely used the waters of Fleming Spring Branch, then state whether or not the waters of said creek during each of said ten years while irrigation was in progress, ceased to flow down to or opposite plaintiff's 300-acre tract of land? Answer: No."

"15. State whether or not the plaintiff was dependent upon the water of Simpson Creek to supply his cattle on the 200-acre pasture with water and his tenants on said 300-acre tract with water for domestic purposes. Answer: Yes."

"16. Did the plaintiff and his tenants on said 300-acre tract use the water of Simpson Creek for domestic purposes and to water his cattle in his pasture on said 300-acre tract of land? Answer: Yes."

"17. State whether or not the defendant or his servants, on or about June 22, 1902, diverted the water of Fleming Spring Branch for the purpose of irrigation to such an extent as to dry up the water on Simpson Creek opposite the plaintiff's land, as charged by plaintiff? Answer: Yes."

"18. What is the reasonable value of plaintiff's time or that of his servants in watering his stock situated in the pasture on the 300-acre tract of land during the time Simpson Creek opposite his pasture on said 300-acre tract was dry? In answering this amount, you can not allow for more than 30 days time. Answer: $60."

"19. State the difference in value of defendant's crop raised on the McAnelly farm for the year 1902, and the value of said crop had the plaintiff not restrained him by injunction from using water after July 11, 1902? Answer: $225."

"We the jury find that plaintiff Carter is the owner of the 300-acre tract of land described in his petition and that said Simpson Creek forms the eastern boundary of this tract of land. And we the jury find that the defendant Hall is the owner of surveys Nos. 595 and 596, and that Fleming Spring Branch has its source on survey No. 595 and runs through surveys Nos. 595 and 596."

Upon this verdict the court rendered a judgment perpetually enjoining appellant from diverting the waters of Fleming Branch for the purpose of irrigation to such an extent as to prevent the water from flowing in some quantity down to the south line of said 300-acre tract of land.

In the first place it is contended that there was no evidence to sustain the answers to the eleventh, twelfth and fourteenth issues, to the effect that prior to 1902, while irrigation was in progress on appellant's lands, the water would flow down to or opposite appellee's lands.

We have carefully examined the statement of facts, and while no witness testifies precisely to this state of facts, and while it is pointedly denied by some of the witnesses, yet there are facts and circumstances testified to, upon which we think the jury might properly base these findings.

It is next insisted that the court misdirected the jury as to what was an *arid* portion of the State. The jury were instructed that "by arid portions of the State is meant those portions of the State where rainfall is insufficient for agricultural purposes, and irrigation therefore necessary. Where the rainfall is sufficient for agricultural purposes that portion is not within the arid region, even though irrigation might or would increase the productiveness of the soil there."

Appellant claims that an arid portion of the State should have been defined as one "in which, by reason of insufficient rainfall, irrigation is necessary for successful farming for successive years."

The question whether this was an arid portion of the State was, of course, an important one in this case. If it was not an arid portion of the State, then the use of water for irrigation was subordinate to the

use for domestic purposes. In those portions of the State called arid, by reason of the necessity for irrigation, this use is put upon an equal footing with such other necessary uses as water for stock and domestic purposes. We realize the difficulty of framing an accurate definition. Irrigation might be necessary for some crops and not for others; it might be necessary on some character of lands and not on others; it might be necessary for one year or a number of years, and not for other years. The jury can not be instructed definitely with reference to all this. The prime question, however, seems to us to be whether the conditions are such that a jury can say that the use of water for irrigation is a necessity. We believe that this question was submitted about as clearly and accurately as possible in the charge given. Mud Creek Irrigation Co. v. Vivian, 74 Texas, 170.

The jury having found that the lands were not situated in an arid portion of the State, appellee was entitled to an injunction, unless appellant had acquired by prescription the right to the use of the water.

This brings us to the third contention of appellant, which is that under the findings of the jury his prescriptive right was established. It is claimed that the distance to which the water would flow should have no bearing upon the question, and that the finding of the jury that appellant Hall, and those under whom he claimed, had continuously, peaceably and adversely diverted and used the water from Fleming Spring Branch in irrigating the farm on said surveys, for a period of ten years before the institution of the suit, entitled them to a judgment.

That a prescriptive right to use the waters of a stream may be acquired can not be questioned, and there are many cases which hold that whenever an upper proprietor uses so much of the waters of the stream as to create a material diminution of the water, the lower proprietor has a cause of action at once, although he may at the time suffer no actual damage, and that if he delays long enough, the use of the upper proprietor will ripen into a prescriptive right. There is another principle, however, equally established,—"The right acquired by prescription is only commensurate with the right enjoyed. The extent of the enjoyment measures the right." Black's Pomeroy on Water Rights, sec. 132. The use of a given amount, no matter how long continued, would give no right to use a greater quantity.

In such cases, therefore, it becomes necessary not only to determine the character and length, but also the extent of the use. The difficulty of measuring this in a case like the present is apparent. In a large stream where the flow was reasonably uniform and constant, it would be easier to determine, but in a small branch fed by a single spring, varying in size at various seasons and during different years, the task is more difficult. Several methods suggest themselves, but each is open to objection. Appellant maintains that the fact that his headgates and irrigation ditches were in the same position as before was con-

clusive, but it is the use of the water, not the preparation to use it, which creates the prescriptive right. The number of acres irrigated suggests itself as a possible measure of the extent of the use, but this must necessarily be inaccurate on account of the varying character of crops and the variation in seasons, requiring more water at one time than another.

The number of cubic feet used, or the proportionate part of the water of the stream might afford a measure of the extent of use, but the evidence does not furnish any accurate information as to this.

We are unable to say that the method adopted by the court was not as accurate and practical a way of measuring the extent of the use by appellant as could have been resorted to under the circumstances of the case.

The issues and the answers establish the fact that while appellant and his predecessors in title had for more than ten years continuously, peaceably and adversely used a portion of the waters for irrigation, that their use had never been so extensive as to prevent the water from flowing in some quantity down to the south line of appellee's land, but that in June, 1902, the water ceased entirely to flow down to appellee's land, and that this was due to the use of the water by appellant for irrigation.

We think it clear that these facts authorized the court in finding that appellant's prescriptive right did not go to the extent of the use exercised by him in the year 1902, and that to this extent the appellee was entitled to his injunction.

We have carefully considered all of the assignments of error, but the views expressed virtually dispose of them. Finding no error in the judgment, it is affirmed.

*Affirmed.*

Writ of error refused.