GEO. W. CLUCK AND WIFE v. HOUSTON & TEXAS CENTRAL
RAILROAD COMPANY.

Decided February 10, 1904.

**1.—Evidence—Value—Opinion.**
   A witness may give his opinion of the value of the use of property,
though it has no market value and he is not qualified as an expert, where
he has and utilizes means for forming an intelligent opinion superior to those
of the jurors.

**2.—Water—Use by Trespasser.**
   No more than nominal damages are recoverable for the use by a trespasser
of water rising upon and flowing off from plaintiff's land, where such use
has not interfered with any which the plaintiff would have made of it.

**3.—Stenographer—Employed by Attorney.**
   Objection to the selection, as official stenographer, of a person in the
employment of an attorney in the cause, is addressed to the discretion of
the court; but the practice is criticised.

Appeal from the District Court of Travis. Tried below before Hon.
R. L. Penn.

*John Dowell,* for appellant.

*S. R. Fisher* and *Baker, Botts, Baker & Lovett,* for appellee.

KEY, ASSOCIATE JUSTICE.—This is the second appeal in this case.
7 Texas Ct. Rep., 346. At the last trial the plaintiffs sought to recover
damages upon three grounds: (1) Because the defendant had unlaw-
fully taken and appropriated water from their spring; (2) because the
defendant had unlawfully taken possession of and used a strip of land
belonging to the plaintiff 60 feet wide by 600 feet long; and (3) upon
averments that the wrongs referred to were committed willfully, ma-
liciously and oppressively, the plaintiffs sought to recover exemplary
damages.

After hearing such testimony submitted by the plaintiffs as the court
held was admissible, the court gave a peremptory instruction to the
jury to find for the plaintiffs damages in the sum of 1 cent. Verdict
and judgment were so rendered and the plaintiffs have appealed, and
present the case in this court on numerous assignments of error.

We sustain the assignments which complain of the action of the trial
court in not submitting one phase of the plaintiffs' case to the jury, and
in excluding the testimony of the plaintiff George W. Cluck bearing
upon that subject. We have reference to the rental value of a strip of
land consisting of 60 by 600 feet, and stated by the plaintiffs in their
petition, and by George W. Cluck in his testimony, to be on the west
side of the railroad.

In reference to the value of the use of the strip of land, the plaintiffs
offered the testimony of the plaintiff G. W. Cluck to the effect that other
lands in that neighborhood had been rented for the purposes of pasture
and grazing, and that he himself had rented a place for that purpose
about the size of and near the strip in question; that he knew the rental

value of such lands, and that the strip in question was worth about $10 per month for the purpose for which the defendant used it, and that there was no demand for it, except by the defendant.

The trial court excluded from the jury the statement of the witness that the land was worth about $10 per month. This court holds that the trial court committed error in so ruling. If the witness had not qualified himself to testify as to the market value, it is believed that he had shown such special knowledge of the property and its uses as to entitle him to give his opinion as to its value and the value of its use. In 12 Am. and Eng. Enc. of Law, 2 ed., 475, the rule is well stated in the following language:

"The market value of anything is the highest price it will bring for any and all uses, and when property has a market value, witnesses may testify thereto as to a fact known and proved, but where no such value exists, the opinions of witnesses are admitted.

"While witnesses may not be required to be experts in the strict and severe sense of the term in order to give opinions on value, and while there is no inflxible rule defining how much a witness must know in order to be so qualified, yet it must be made to appear that he had had and utilized means for forming an intelligent opinion superior to those of the jurors, derived from a knowledge of the character of property in controversy."

See also Railway Co. v. Warren, 137 U. S., 384; Railway Co. v. Donovan, 86 Texas, 378; Railway Co. v. Woods, 31 S. W. Rep., 237; Railway Co. v. Seawright, 8 Texas Civ. App., 593, and cases there cited.

Appellee's contention that the plaintiffs were not the owners of the strip of land referred to, and that it was awarded to the appellee by the former judgment rendered in this case, is not borne out by the facts. The former judgment does award to the railroad company a strip of land outside of its right of way, but on the east side, while the strip of land now in controversy is described in the plaintiffs' petition and by their testimony as on west side.

We overrule the assignments presenting other questions. The plaintiffs failed entirely to show any damage sustained by them on account of the defendant's use of water flowing from the spring on their land. The undisputed testimony shows that the water from the spring runs off in a branch called Running Brushy, which extends through and beyond the plaintiffs' land; that Running Brushy is what is termed in law a flowing stream. In other words, the testimony makes it appear that the water does not rise and remain on the plaintiffs' land, but rises there and flows down the channel of Running Brushy off the plaintiffs' land. This being the case, the plaintiffs were not the absolute owners of all the water. They had the right, as against everyone, to use the water for domestic purposes and for watering their own live stock, and if it be conceded that they had the right, as against a trespasser, to use it for irrigation or other artificial purposes, still they failed to show that the defendant's use of a portion of it had resulted in any damage to them.

They alleged in their petition that the spring had a capacity of about 100,000 gallons per day; and G. W. Cluck testified to the same effect, and stated positively that its average flow for the past ten years was at least 50,000 gallons daily. According to the undisputed testimony the defendant never took more than 15,000 gallons per day from the spring, and it was not shown that this diminution in anywise prevented the plaintiffs from using all the water from the spring they desired to use. They had water for domestic purposes, for their live stock, and for the limited quantity of land which the testimony shows they desired to irrigate. There was no testimony tending to show that if the defendant had not been using water from the spring the plaintiffs would have irrigated more land than they did, or would in any other manner have obtained any additional benefit from the water. It is true that G. W. Cluck testified that there were eight families living near by, and that he could have sold water to them, but he did not state that the defendant's use of the water prevented him from selling water to the families referred to. In fact, he stated that they were still using water from the spring. If the plaintiffs are held to the averment in their petition that the daily flow of the spring was about 100,000 gallons, then the defendant only took about one-sixth of the water, and it was not shown that the residue was not more than sufficient for all the purposes for which the plaintiffs would have applied it. But, regardless of the averments of the petition, and looking alone to the undisputed testimony, the same conclusion is reached. The testimony utterly fails to show that the defendant's use of part of the water which came from the spring in anywise prevented the plaintiffs from using all of the water they would have used, and such as would not have been used would, in a short time after it rose to the surface, have passed off the plaintiffs' land, and thereafter they would have had no right or interest therein.

Appellants assign error upon the action of the court in appointing a stenographer. The bill of exception upon which the assignment is based is rather ambiguous. It indicates that the plaintiffs objected to the appointment of Miss Powers, who was appointed by the court, upon the ground that she was the private stenographer of the defendant's attorney, but does not state that the objection was followed up with proof showing that the facts were as stated in the objection. The objection, however, was not a statutory ground of disqualification; and therefore it was addressed to the sound discretion of the trial judge; and as we reverse the case on other grounds, and as the bill of exception is ambiguous, as above stated, we do not feel called upon to decide whether or not it would be reversible error to appoint as a stenographer a person in the employ of an attorney in the case. However, we do not hold that it would be proper to do so, and think it would be much better to select some person not occupying such relation.

For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*