MARTIN et al. v. BURR et al. (No. 5358.)†
(Court of Civil Appeals of Texas. San Antonio. Dec. 5, 1914. Rehearing Denied Jan. 6, 1915.)

1. ADVERSE POSSESSION (§ 1*)—"PRESCRIPTION"—"LIMITATION."

There is a distinction between title by limitation and a prescriptive title, in that the latter is based upon a presumed grant to the property or use, while the former is not.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 1–10, 12–65, 67–76; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, First and Second Series, Limitation of Actions; Prescription.]

2. ADVERSE POSSESSION (§ 58*)—HOSTILE POSSESSION—GROUND OF ACTION.

The entry and holding to build up a prescriptive title which is founded on uninterrupted use and enjoyment time out of mind or for such a length of time that the memory of man runneth not to the contrary must be hostile to the rights of the true owner, and such owner's rights must be invaded by such hostile acts as

would constitute grounds for action against the adverse claimant, and so as to make the possession appear to be for the benefit of the claimant.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 279–281; Dec. Dig. § 58.*]

3. WATERS AND WATER COURSES (§ 42*)—RIPARIAN OWNERS—RIGHT TO WATER.

A riparian owner has the right to take all the water he needs, if such use does not injure other owners, in which latter case he may have his just proportion.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 33, 34; Dec. Dig. § 42.*]

4. WATERS AND WATER COURSES (§ 140*)—RIPARIAN RIGHTS—UNUSUAL USE.

The natural uses of water by a riparian owner take precedence over such unusual uses as irrigation, mills, mining, etc.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 140.*]

5. WATERS AND WATER COURSES (§ 138*)—PRESCRIPTIVE USE OF WATER—NECESSITY OF CAUSE OF ACTION.

The right of action against riparian owners for using more than their just proportion of the water does not accrue, so as to be ground for a prescriptive title, until an injury is caused or threatened to the complaining owner.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 150, 151; Dec. Dig. § 138.*]

6. WATERS AND WATER COURSES (§ 152*)—USE OF WATER—PRESCRIPTION—PLEADING.

Where prescriptive title to the use of the water of a stream as against other riparian owners is set up in a suit to enjoin such use, it must be alleged and proved that none of the plaintiffs were under disability.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

7. WATERS AND WATER COURSES (§ 152*)—USE OF WATER—PRESCRIPTION—EVIDENCE.

In a suit to enjoin the unlawful use of water by riparian owners, in which prescriptive title to the use of the water is set up by defendants, evidence *held* to show that during the claimed prescriptive period some of the plaintiffs were under disability.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

8. HUSBAND AND WIFE (§ 262*)—COMMUNITY PROPERTY—PRESUMPTIONS.

There is a presumption of law that land acquired during coverture is community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. § 262.*].

9. WATERS AND WATER COURSES (§ 152*)—USE OF WATER—PRESCRIPTION—BURDEN OF PROOF.

In a suit to enjoin the unlawful use of water by riparian owners, in which prescriptive title to the use of the water is set up by defendants, defendants had the burden of showing with reasonable certainty which part of the flow of the stream they were claiming during the time they were maturing their prescriptive rights.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

10. WATERS AND WATER COURSES (§ 152*)—USE OF WATER—PRESCRIPTION—EVIDENCE.

In a suit to enjoin the unlawful use of water by riparian owners, in which prescriptive title to the use of the water is set up by defendants, evidence *held* insufficient to show that there was during the prescriptive period any injury to the complaining owners which would constitute a cause of action.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 156, 157; Dec. Dig. § 152.*]

11. NEW TRIAL (§ 112*)—JOINT MOTION—SUFFICIENCY OF EVIDENCE.

Where defendants filed a joint motion for a new trial, claiming that the verdict is against the weight of the evidence, the motion will be overruled if the evidence supports the verdict as to any of the defendants.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 233; Dec. Dig. § 112.*]

Appeal from District Court, Kinney County; W. C. Douglas, Judge.

Suit by J. K. Burr and Mrs. Elizabeth Moore, as guardian for G. Bedell Moore, against T. J. Martin and others. From the decree rendered, part of the defendants appeal. Affirmed.

Jones & Thurmond, of Del Rio, Baker, Botts, Parker & Garwood, of Houston, Boggess & Smith, of Del Rio, and W. B. Teagarden, of San Antonio, for appellants. McFarland & Lewright, of San Antonio, and Murray & Murray, of Eagle Pass, for appellees.

CARL, J. This is a suit brought by appellees, J. K. Burr and Mrs. Elizabeth Moore, as guardian for her minor son, G. Bedell Moore, plaintiffs in the court below, seeking to perpetually enjoin the appellants T. J. Martin, R. Stratton, and Chas. Gaebler from diverting from the channel of the Las Moras creek the waters of said creek and using the same upon their lands for irrigation purposes, and appellant Galveston, Harrisburg & San Antonio Railway Company from diverting said waters and using same for supplying their steam engines used in transporting their trains in such quantities as to so reduce the waters flowing in said channel as to cause the same to cease to flow over and across the lands of appellees in sufficient quantities for their domestic purposes and to furnish drinking water for their stock. Each appellant specially denied all issues of fact in plaintiff's pleadings, and by special answer claimed the right to use the water from said stream in the manner and for the purposes and to the extent by each particularly asserted, and that this right had been acquired by limitation and prescription. There were other parties defendant below, all of whom are disposed of by the judgment, none of whom are appealing from the judgment entered except these appellants. The case was tried in the court below before a jury, but at the conclusion of the testimony the court peremptorily in-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

structed the jury to return the following verdict:

"We, the jury, find and return our verdict as follows:

"(1) Plaintiffs, and each of them, shall recover and have a right to a continuous flow of the Las Moras creek along and through the lands described in their second amended original petition for the use of water for domestic purposes, including the watering of live stock upon said lands, against each of the defendants, Thomas J. Martin, Max Indlekoffer, John Gilder, Martin McGovern, Chas. Gaebler, R. Stratton, Jack Gay, August Beidler, R. L. Dawson, Emmett Dawson, and Galveston, Harrisburg & San Antonio Railway Company to the use of said water for any purpose.

"(2) Plaintiffs shall recover and have a writ of injunction against the defendants R. Stratton, Thomas J. Martin, R. L. Dawson, and Emmett Dawson restraining them and each of them and their agents, employés, and servants from diverting the waters of the Las Moras creek for irrigation purposes at such time or in such quantities as would cause the said creek to cease to flow on or over the lands of plaintiffs or either of them; that plaintiff shall not recover nor have a writ of injunction against the defendants Max Indlekoffer, Jno. Gilder, Martin McGovern, Chas. Gaebler, Jack Gay, August Beidler, and Galveston, Harrisburg & San Antonio Railway Company.

"(3) That defendants Max Indlekoffer, Jno. Gilder, Martin McGovern, Chas. Gaebler, R. R. Stratton, Thomas J. Martin, and Galveston, Harrisburg & San Antonio Railway Company, and each of them, shall take naught by their respective cross-actions herein."

The jury returned a verdict in accordance with the court's instruction, and judgment was entered accordingly thereon.

The contentions of appellants, briefly stated, are: (1) That they were each entitled to judgment as a matter of law; or (2) in any event the issue was one of fact for the jury to determine.

Appellees contend that the court's action is justified because appellants failed to allege and prove an exclusive, adverse, open, and notorious use of, and claim to, a certain definite quantity of water during the prescriptive period, and that during that time appellees nor any of their grantors were under legal disability, etc.

The Las Moras creek is a water course or stream having its source or hand spring on the government reservation in Kinney county, Tex., known as Ft. Clark, which occupies what is known upon the map of said county as survey No. 254, made in the name of Samuel Maverick, and running thence in a southwesterly direction through a portion of Kinney county and Maverick county to a point in the latter county where it empties into the Rio Grande.

"The defendants in this suit are all owners of land along the course of this stream, and the plaintiffs are the owners of the several surveys described in their pleadings, and said stream runs through each of said surveys, or such as it does not run through abut thereon. The plaintiffs' (appellees') lands are those nearest the mouth of said stream, extending from the confluence thereof with the Rio Grande up the creek to the upper line of survey No. 219, and the lands of defendants all lie above those of plaintiffs on said stream, and all the irrigated lands of each defendant are riparian to said stream, with the exception of appellant Thos. J. Martin's two Bruno surveys (No. 1 in name of Zick Bruno, and No. 2 in name of Joseph Bruno), of 160 acres each, which are not riparian, because they do not touch the creek nor call for it, but are detached therefrom by intervening lands. Defendant Galveston, Harrisburg & San Antonio Railway Company owns a right of way through the 'Dolores Town Tract' and across the Las Moras creek, and maintains a pumping plant on its said right of way, which supplies water to two storage tanks, one at the station of Spofford, and the other at the station of Kinney Siding. These tanks furnish water to the engines used by said railway company in the transportation of its trains."

The defense relied upon by appellants was a title by prescription to the use of the water of Las Moras creek. It is said in Kinney on Irrigation and Water Rights (2d Ed.) vol. 2, p. 1876, § 1048:

"There are five principal elements necessary for the acquisition of a permanent title by prescription, namely: First, the possession must be actual occupation or use, open and notorious, and exclusive; second, it must be hostile against the rights of the party against whom the right is claimed; third, it must be held under a certain right as the property of the claimant; fourth, it must be continuous and uninterrupted for the full period prescribed by the statute of limitations; fifth, during all of this period taxes, if any, are assessed against the property claimed, and must be paid by the claimant."

And, continuing:

"If it is a water right so claimed, he must have had the actual use of the water under the right, and have applied the water to some beneficial use or purpose during the full period prescribed by the statute of limitations; otherwise there is no right to the water which can become the basis of an adverse claim. * * * The mere use of water, a right of way, or a ditch, or canal in any particular manner, for however long a period of time, will not ripen prescriptively into a permanent right. There must be something more. The use during the full period of time necessary to acquire the right must have been hostile to the owner. Without a hostile holding against the owner, both in the inception and the continuance of a claimed right, no prescriptive right can be acquired."

[1, 2] There is a distinction between title by limitation and a prescriptive title, in that the latter is based upon a presumed grant to the property or the use, while the former is not. Under the common law, the mode of acquiring title by what is called "prescription" is founded on uninterrupted use and enjoyment "time out of mind, or for such a length of time that the memory of man runneth not to the contrary." The entry and holding in order to build up a title by prescription must be hostile to the rights of the true owner. The true owner's rights must be invaded by such hostile acts as would constitute grounds for action against the adverse claimant or intruder, and so as to make the possession appear to be for the benefit of the claimant. Swan v. Munch, 65 Minn 500, 67 N. W. 1022, 35 L. R. A. 743, 60 Am. St. Rep. 491. And there are a number of authorities which hold that a right of action must exist on account of the invasion of the owner's rights and injury to him during the entire prescriptive period, in order to

mature a prescriptive title. Logan v. Williams, 159 Ky. 412, 167 S. W. 124; White v. McNabb, 140 Ky. 828, 131 S. W. 1021; Stratton v. Boys' School, 216 Mass. 83, 103 N. E. 87, 49 L. R. A. (N. S.) 57; Featherman v. Hennessy, 42 Mont. 535, 113 Pac. 751.

[3-5] For all riparian owners have the right to use their just proportion of the water flowing past their lands. And the natural use of such waters takes precedence over such unusual use as irrigation, mills, mining, etc. Every riparian owner has the right to take all the water his needs require as long as such use does not injure his riparian neighbors, in which latter case he may use only his just proportion. No cause of action accrues until the one, by using more than his rightful share of the water, causes or threatens injury to complaining party. Thus, it will be seen, the right to use water is a variable one; for, while one man may use the water both for his stock and domestic purposes, as well as for the irrigation of his farm, his neighbor may require it only for stock and domestic uses; or, possibly, he may not need the water at all. He may intend to use his land at some future day for the purpose of establishing an irrigated farm, and yet at present be not using it for any purpose. If he is not using the land, he has no use for the water flowing past, and would not be injured even by his neighbors above him using all of the water, and certainly there would be, in that instance, no injury to him, and it follows that no cause of action exists. As long as appellees had sufficient flowing water for their stock and domestic purposes, they had no cause of action against appellants, because they had not been injured. They were not deprived of any right, and must they be held to presume that they will be denied that which the law says is theirs when they do have occasion to use it? Must they go into court and say virtually that they have all the water they need now; that they have suffered no injury, but may do so in the future, and, on account of that fear, crave relief at the hands of the court? It is the policy of the law to encourage rightful use of the public resources, but at the same time it looks with disfavor on monopolies. As westward the star of empire takes its way and population becomes more dense, the untrammeled rights of the frontier must to some extent give way to the growing needs of a more complex social system. When appellants first began watering their herds and farms from the Las Moras there was an abundance for the scattering residents of that western country, and no discordant note was heard save the distant plaintive wail of a disgruntled coyote.

In support of the reasoning above, we cite from Featherman v. Hennessy, supra, where Chief Justice Brantly of the Supreme Court of Montana says:

"But use of water does not begin to be adverse as against a prior appropriator unless it results in a deprivation to such appropriator, or amounts to such an invasion of his rights as will enable him at any time during the statutory period to maintain an action against the adverse user. In Bullerdick v. Hermsmeyer, 32 Mont. 541, 81 Pac. 334, it was said: 'The use of the waters in the streams in this state is declared by the Constitution to be a public use. Const. art. 3, § 15. Such being the case, every citizen has a right to divert and use them, so long as he does not infringe upon the rights of some other citizen who has acquired a prior right by appropriation. Each citizen may divert and use them without let or hindrance when no prior right prevents. When his necessary use ceases, he must restore them to the channel of the stream; whereupon they may be used by any other person who needs them. In no case does such use become adverse until some superior right is infringed and the owner of it suffers deprivation. It if becomes and continues adverse and exclusive for the full period prescribed by the statute, and the owner suffers the consequent deprivation, such use ripens into a right by prescription.' In Talbott v. Butte City Water Co., 29 Mont. 17, 73 Pac. 1111, we find this language: 'The plaintiffs had use for the water only for agricultural and mining purposes, and, when not so using it, the law required them to turn it back into the stream for the use of this defendant, or any other person or corporation which might have a right to use it. No use of water by a subsequent appropriator can be said to be adverse to the right of a prior appropriator, unless such use deprives the prior appropriator of it when he has actual need of it. To take the water when the prior appropriator has no use for it invades no right of his, and cannot even initiate a claim adverse to him.'"

The following authorities also support the views above expressed: Lakeside Irrigation Co. v. Kirby, 166 S. W. 715; Live Stock Co. v. Booth, 102 Cal. 151, 36 Pac. 431; Stratton v. Hermvan Boys' School, 216 Mass. 83, 103 N. E. 87, 49 L. R. A. (N. S.) 57; Elliot v. Fitchburg, 10 Cush. (Mass.) 191, 57 Am. Dec. 85; Kinney on Irrigation and Water Rights (2d Ed.) § 1606, 1612; San Joaquin, etc., Co. v. Fresno, etc., Co., 158 Cal. 626, 112 Pac. 182, 35 L. R. A. (N. S.) 832; St. Martin v. Skamania Boom Co., 79 Wash. 393, 140 Pac. 355; Weil on Water Rights in Western States, § 588; San Juan Ditch Co. v. Cassin, 141 S. W. 815; Featherman v. Hennessy, 42 Mont. 535, 113 Pac. 751; Kinney on Irrigation and Water Rights, § 1050; Fifield v. Spring Valley Water Works, 130 Cal. 552, 62 Pac. 1054; Anaheim Water Co. v. Semi-Tropic Water Co., 64 Cal. 185, 30 Pac. 623; Last Chance Water Ditch Co. v. Heilbron, 86 Cal. 1, 26 Pac. 523; Carson v. Hayes, 39 Or. 97, 65 Pac. 814; Brossard v. Morgan, 7 Idaho, 215, 61 Pac. 1031; Bree v. Wheeler, 129 Cal. 145, 61 Pac. 782; Clark v. Ashley, 34 Colo. 285, 82 Pac. 588; Oneto v. Restano, 78 Cal. 374, 20 Pac. 743. In addition to the above, we have a statutory provision which provides that, when water is diverted to nonriparian land, the same shall not be done to the prejudice of a lower owner without his consent, except after condemnation of such water as provided by law.

[6] The appellants, in their cross-action to establish prescriptive title to the water they were using, did not allege, neither did they prove, that none of appellees nor their grantors during the period it is claimed the prescriptive title was matured labored under disability of any kind. It seems to be well settled in Texas that, where it is sought to maintain a prescriptive right to a highway, it is necessary to allege and prove that none of the owners of the servient estates, nor their grantors, labored under disability during the prescriptive period. City of Austin v. Hall, 93 Tex. 595, 57 S. W. 563; Evans v. Scott, 37 Tex. Civ. App. 373, 83 S. W. 874; Saunders v. Simpson, 97 Tenn. 382, 37 S. W. 195; Wright v. Fanning, 86 S. W. 786; Dees v. Harrison, 95 S. W. 1093; Travis v. Hall, 27 Tex. Civ. App. 95, 65 S. W. 1077; West v. City of Houston, 163 S. W. 679; Railway Co. v. Gaines, 27 S. W. 266; Williams v. Kuykendall, 151 S. W. 629.

Kinney, in his work on Irrigation and Water Rights (volume 3, p. 2797, 2d Ed.), says, in reference to the pleadings necessary by the respective parties:

"Where, however, the plaintiff chooses to set up his claim as having been acquired by adverse user sufficient to amount to a prescriptive right, it is necessary that he plead all of the essentials necessary for the acquisition of the right by that manner, or as prescribed by the statutes for pleadings in such cases. Where, however, in answer to the claims set forth by the plaintiff, the defendant relies upon adverse user amounting to prescription, he is held to a much stricter rule in his pleading than is the plaintiff. The weight of authority holds that it is not sufficient to simply set up a general allegation of ownership of the right, but that he must plead his adverse user with all the particularity required for such pleadings in the jurisdiction where the action is pending. The defendant may plead the statute, by reference to the appropriate section thereof; or, if he chooses, he may plead the facts constituting the limitation or prescriptive right. In doing the latter, however, it is incumbent upon him to plead all the elements entering into a prescriptive right."

This is given to show the strictness required in pleading a prescriptive title. It will not be denied that, if any riparian owner should be under legal disability during the prescriptive period, title would not mature against him. There is no essential difference between a prescriptive right to a road and a title to use the water of a stream. In the one case the right by prescription to the road rests upon a presumption that the owners of the servient lands granted the easement and the grant has been lost; while in the other case the same presumption is the basis of the prescriptive right or title to the water. Judge Brown, in City of Austin v. Hall, supra, says:

"To sustain this claim, it must appear that the use upon which the right is predicated has continued for the requisite time, during which the owner was not under disability to resist the claim. 2 Washburn on Real Property, 327, § 20; Watkins v. Peck, 13 N. H. 376 [40 Am. Dec. 156]; Melvin v. Whiting, 13 Pick. [Mass.] 188; Ferrell v. Ferrell, 1 Baxt. [Tenn.] 332; Saunders v. Simpson [97 Tenn. 382] 37 S. W. 195. Mr. Washburn states the rule in this language: 'To give a user this effect, it must be uninterrupted in the land of another by the acquiescence of the owner, for a period of at least 20 years (or the period of limitation of the state where the land lies), under an adverse claim of right; while all persons concerned in the estate in or out of which it is derived are free from disability to resist it, and are seized of the same in fee and in possession during the requisite period.'"

There is no sufficient reason why there should be any stricter requirements in the highway case than in case of water rights. It has been argued that one is an easement and the other is property; but the method of acquiring them are identical, and we think the requirements of the pleading should be the same.

Appellants did not plead that none of appellees nor their grantors, during the prescriptive period, were not under disability; and any evidence thereon would not be responsive to the pleadings.

[7, 8] For that matter, taking all the testimony from appellants' standpoint on the matter of legal disability, it only inferentially goes to show that none of the parties were under legal disability, while the direct and positive evidence of appellees showed that the Thompsons, who were appellees' predecessors in title during the prescriptive period, left a minor son whose minority extended over a good portion of time prescriptive title is claimed to have been matured. The lands owned by appellees and involved in this suit were purchased by P. W. Thompson June 1, 1889. Thompson was married to Jeanette Aitchson, June 16, 1885, and she died in October 1892, leaving three children, the oldest of whom could not have become 20 years old before about March 16, 1907. P. W. Thompson died in 1910. This suit was filed February 12, 1912, and appellees had not owned the land 10 years at the time the suit was filed. The presumption of law would be that the land acquired by Thompson during coverture was the community property of himself and his wife, and, when she died, that the surviving child would take an interest in the property.

There is no evidence to show that appellee or their predecessors in title were injured by the cessation of the flow of Las Moras creek on or prior to February 12, 1902, and this suit was filed February 12, 1912; and we have held that no cause of action existed until an injury was shown. Biggs v. Liffingwell, 132 S. W. 902; Cluck v. Railway Co., 34 Tex. Civ. App. 452, 79 S. W. 80; Santa Rosa Co. v. Pecos Co., 92 S. W. 1014; 40 Cyc. 608, 696–698. Some of the witnesses say that at different times they had seen the creek when it was not running, but whether from drouth or from diversion of the water for irrigation does not appear. We do not recall any evidence showing a cessation of flow or a diminution thereof by reason of appellants' use prior to February

12, 1902, which must have been shown to fill out the prescriptive title.

[9, 10] The evidence does not show with any degree of certainty how much water appellants took regularly during the prescriptive period, but it is urged that they take prima facie to the full capacity of their ditches. This, however, is not shown, and common knowledge tells us that the flow in any stream or ditch will depend on other conditions, such, for instance, as the water fall or decline, whether it be a swift flowing stream or slow and sluggish. A small ditch, in one instance, might carry more water than one twice as large which came from a slow-flowing stream and had little decline. In so far as the amount of water regularly appropriated, or what was reasonably necessary, to irrigate the lands is not shown, with any degree of certainty, and since title is claimed by reason of appropriation and use, appellants had the burden of showing with reasonable certainty what part of the flow of the stream they were laying claim to during the time they are maturing their prescriptive title. Biggs v. Miller, 147 S. W. 632; Biggs v. Lee, 147 S. W. 709; Salem Co. v. Lord, 42 Or. 82, 69 Pac. 1033, 70 Pac. 832; Irving v. Media, 194 Pa. 648, 45 Atl. 482; Farmers' Co. v. Irrigation Dist., 16 Idaho, 525, 102 Pac. 481; Salt Lake City v. Water Co., 24 Utah, 249, 67 Pac. 672, 61 L. R. A. 648; Cyc. vol. 40, pp. 734, 736; and Hall v. Carter, 33 Tex. Civ. App. 230, 77 S. W. 19. They have not alleged, neither have the appellants proven, that every year during the prescriptive period their diversion and appropriation of water caused the stream to cease to flow by appellees' land. Hall v. Carter, 33 Tex. Civ. App. 230, 77 S. W. 19; Ison v. Sturgill, 57 Or. 109, 109 Pac. 579, 110 Pac. 535; Smith v. Duff, 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582; Meng v. Coffee, 67 Neb. 500, 93 N. W. 713, 60 L. R. A. 910, 108 Am. St. Rep. 697. Neither was it pleaded or proven how much water was reasonably necessary for the irrigation of appellants' land when properly prepared for cultivation and in reasonably good condition for irrigation. Farmers' Co. v. Irrigation Dist., 16 Idaho, 525, 102 Pac. 481. Likewise the quantity of water used by the Galveston Harrisburg & San Antonio Railway Company is shown to have varied, and for the last few years it was shown that it had varied from 50,000 gallons to 75,000 gallons per day.

[11] But even if this were not true, the railway company made a common cause with the other defendants and filed a joint motion for a new trial, in which it was claimed that the verdict was against the weight of the evidence. And it has been held that, where this is done, the same should be overruled, if the evidence supports the verdict as to any of the defendants. M., K. & T. Ry. Co. v. Brown, 155 S. W. 979.

The judgment entered is in the very nature of the litigation, somewhat uncertain, but in matters of this kind we think it is about as certain as it can be made. There is not such uncertainty but that appellants may understand its terms.

We have carefully examined all assignments, and, finding no reversible error, they are overruled, and the judgment is in all things affirmed.